**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Christopher Atwood, *et al.*,

    Plaintiffs,

v.

UC Health, *et al.*,

    Defendants.

Case No. 1:16cv593

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon Defendants UC Health and West Chester Hospital, LLC's Motion to Dismiss (Doc. 6); and Defendants Abubakar Atiq Durrani, MD, Center for Advanced Spine Technologies, Inc.'s Motion to Dismiss (Doc. 7). Plaintiffs have filed a Response (Doc. 8); and Defendants have filed Replies (Docs. 10, 11). In addition, UC Health and West Chester Hospital have filed a Notice of Additional Authority in Support of their Motion (Doc. 12).[1]

### I. BACKGROUND

Plaintiffs are the former patients or the spouses of former patients of Defendant Dr. Abubakar Atiq Durrani. Defendant Center for Advanced Spine Technologies ("CAST") is Dr. Durrani's private medical practice. Dr. Durrani performed surgeries on these patients at Defendant UC Health's West Chester Hospital. Plaintiffs have brought claims against Defendants for negligence; battery; lack of informed consent; intentional infliction of emotional distress; fraud; spoliation of evidence; vicarious liability; negligent

---

[1]The Court acknowledges the unusual passage of time between the filing of the Motions to Dismiss and this Order. The lapse occurred due to ongoing and protracted mediation discussions between the parties.

credentialing, hiring, retention and supervision; violation of the Ohio Consumer Sales Practices Act ("OCSPA"); and violation of Ohio Revised Code § 2923.32.

Defendants UC Health and West Chester Hospital ("UC Defendants") and Defendants Dr. Abubakar Atiq Durrani and CAST ("Durrani Defendants") move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal Rule of Civil Procedure 8 provides that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Defendants maintain Plaintiffs' numerous pleading deficiencies make it impossible to tell what exactly Defendants are alleged to have done to entitle individual plaintiffs to relief. (Doc. 6, PAGEID# 864). Defendants explain that Plaintiffs are required under Rule 8 "to edit and organize their claims and supporting allegations into a manageable format." *Hollon v. E. Ky. Corr. Complex*, No. 10–CV–177–KSF, 2010 WL 2924091 (E.D.Ky. July 22, 2010). While the Complaint (Doc. 4) does at times ramble and is voluminous, it is a far cry from the complaint a related case: *Aaron v. Medtronic, Inc.*, No. 1:13-CV-301, 2013 WL 5177168 (S.D. Ohio Sept. 12, 2013). In *Aaron*, this Court noted that the complaint was "largely unintelligible, inappropriately incorporates by reference numerous allegations from other civil cases in violation of the rules, and is anything but short and plain." *Id.* at *2. This Court also noted that the proposed amended complaint failed to provide particularized allegations for each of the new plaintiffs being added. *Id.* The Court explained that the only place that many of the plaintiffs' names appear is in the list of purported plaintiffs. *Id.* The Complaint in this case does not suffer from the same faults, and therefore, the Complaint complies with the pleading requirements of Federal Rule of Civil Procedure 8.

## B. **Negligence**

Plaintiffs bring claims of negligence against Defendant Dr. Durrani and the UC Defendants.

The Ohio Supreme Court has held that liability based on the alleged negligence of a medical professional requires proof of "(1) a duty running from the defendant to the plaintiff, (2) the defendant's breach of that duty, (3) damages sustained by the plaintiff, and (4) proximate causation of the damages by the defendant's breach of duty." *Loudin*

3

*v. Radiology & Imaging Servs., Inc.*, 128 Ohio St. 3d 555, 559, 948 N.E.2d 944, 949 (Ohio 2011) (citing *Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assoc., Inc.*, 108 Ohio St.3d 494, 498, 844 N.E.2d 1160, 1165 (Ohio 2006)).

The UC Defendants argue that they cannot be held liable for any negligent conduct of Durrani because he was an independent practitioner performing surgeries at the hospital.

While *respondeat superior* does not generally apply to hold the hospital liable for an independent practitioner's negligence, "[a] hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital if it holds itself out to the public as a provider of medical services and in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care." *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St. 3d 435, 444-45, 628 N.E.2d 46, 53 (Ohio 1994). Plaintiffs have sufficiently alleged facts which would support this exception under the theory of agency by estoppel. Therefore, Defendant Dr. Durrani and the UC Defendants' Motions to Dismiss Plaintiffs' claim for negligence are DENIED.

### C. Battery

Plaintiffs bring claims for battery against Defendant Dr. Durrani only.

The Ohio Supreme Court has held that "[e]ven though a surgical operation is beneficial or harmless, it is, in the absence of a proper consent to the operation, a technical assault and battery." *Lacey v. Laird*, 166 Ohio St. 12, 21, 139 N.E.2d 25, 31 (Ohio 1956). Whether consent has been given is generally an issue of fact. *Estate of Leach v. Shapiro*, 13 Ohio App. 3d 393, 395, 469 N.E.2d 1047, 1052 (Ohio Ct. App. 1984).

4

Defendants have not moved to dismiss Plaintiffs' claim for battery. Accordingly, Defendants are not entitled to dismissal of this claim.

### D. **Lack of informed consent**

Plaintiffs bring claims for lack of informed consent against Defendant Dr. Durrani only.

In Ohio, the elements of the tort of lack of informed consent are as follows:

> (a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;
>
> (b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and
>
> (c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy.

*Nickell v. Gonzalez*, 17 Ohio St. 3d 136, 139, 477 N.E.2d 1145, 1148 (Ohio 1985).

Defendant Dr. Durrani has not moved to dismiss Plaintiffs' claim for lack of informed consent. Accordingly, Dr. Durrani is not entitled to dismissal of this claim.

### E. **Intentional infliction of emotional distress**

Plaintiffs bring claims of intentional infliction of emotional distress against Defendant Dr. Durrani only.

Under Ohio law, a plaintiff alleging a claim of intentional infliction of emotional distress must prove the following elements:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;

5

(2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;

(3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and

(4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App. 3d 557, 698 N.E.2d 503, 506 (Ohio Ct. App. 1997)).

Defendant Dr. Durrani has not moved to dismiss Plaintiffs' claims for intentional infliction of emotional distress. Accordingly, Dr. Durrani is not entitled to dismissal of this claim.

### F. Fraud

Plaintiffs bring claims of fraud against all Defendants.

The Supreme Court of Ohio has held that "[a] physician's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relies to his detriment, may give rise to a cause of action in fraud independent from an action in medical malpractice." *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 56, 514 N.E.2d 709, 712-13 (Ohio 1987). State-law claims of fraud that are litigated in federal court must meet the heightened pleading standard required under the Rule 9(b) of the Federal Rules of Civil Procedure. *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015).

The UC Defendants maintain that Plaintiffs' fraud claim against them fails to state a claim because there is no allegation that the hospital made material representations

6

upon which Plaintiffs relied. The UC Defendants again point to Dr. Durrani's status as an independent practitioner.

In *Moore v Burt,* the Ohio Court of Appeals determined that under Ohio law, a hospital does not owe a patient a duty to reveal the activities of independent, non-agent physicians. 96 Ohio App.3d 520, 531-32, 645 N.E.2d 749, 757 (Ohio Ct. App. 1994). Instead, "if a hospital fails to protect its patients from fictitious medical treatment by independent contractors, the hospital exposes itself to a possible negligent credentialing action." *Id.*

Because Plaintiff cannot state a claim for fraud against the UC Defendants, the UC Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' claim for fraud. However, because Plaintiff has stated a claim for fraud against the Durrani Defendants, the Durrani Defendants' are not entitled to dismissal on this claim.

### G. Spoliation of evidence

Plaintiffs bring claims of spoliation of evidence against all Defendants.

Ohio recognizes an independent tort of intentional spoliation of evidence. *Elliott-Thomas v. Smith*, 2018 WL 2148088, *2 (Ohio May 8, 2018) (citing *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St. 3d 28, 29, 615 N.E.2d 1037 (Ohio 1993)). The elements of this claim are: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Id.* (quoting *Smith*, 67 Ohio St.3d at 29, 615 N.E.2d 1037). The Ohio Supreme Court has recently held that "allegations of intentional interference with or concealment of evidence

are not actionable under the independent tort of intentional spoliation of evidence." *Id.* at *4.

Defendants argue that Plaintiffs have failed to plead facts sufficient to support a spoliation claim. Plaintiffs allege that "West Chester Hospital/UC Health through its agents and employees, willfully altered, destroyed, delayed, hid modified and/or spoiled ("spoiled") Plaintiffs' records, emails, billing records, paperwork and related evidence." (Doc. 4, ¶ 821). Plaintiffs allege the UC Defendants knew that there was pending or probable litigation involving Plaintiffs; and the UC Defendants destroyed evidence in order to disrupt Plaintiffs' cases. (Id., ¶¶ 822, 823). These allegations contain the factual content that allows this Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, Plaintiffs do not allege any action taken on part of the Durrani Defendants.

Because Plaintiffs have not stated a claim for spoliation of evidence against the Durrani Defendants, the Durrani Defendants' Motions to Dismiss is GRANTED as to Plaintiffs' claim for spoliation of evidence. Because Plaintiffs have stated a claim for spoliation of evidence against the UC Defendants, the UC Defendants' Motion to Dismiss is DENIED as to Plaintiffs' claim for spoliation of evidence.

### H. Vicarious liability

Plaintiffs allege this claim of vicarious liability against Defendant CAST only. While this is plead as a separate claim, the Court reads this section of the Complaint as being designed to preserve Plaintiffs' theory that CAST is liable for the acts of its employee, Dr. Durrani.

8

"Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior." *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St. 3d 435, 438, 628 N.E.2d 46, 48 (Ohio 1994). The Ohio Supreme Court has explained: "It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, . . . the behavior giving rise to the tort must be "calculated to facilitate or promote the business for which the servant was employed." Byrd v. Faber, 57 Ohio St. 3d 56, 58, 565 N.E.2d 584, 587 (Ohio 1991) (quoting *Little Miami RR. Co. v. Wetmore*, 19 Ohio St. 110, 132 (Ohio 1869)).

Defendant CAST has not moved to dismiss this "claim" for vicarious liability and therefore, CAST is not entitled to dismissal of this claim against it.

### I. <u>Negligent credentialing, hiring, retention and supervision</u>

Plaintiffs bring claims of negligent credentialing against the UC Defendants.

The Ohio Supreme Court has explained:

This court's jurisprudence recognizes generally that an employer is not vicariously liable for the negligence of an independent contractor, since the employer has no right to control the mode and manner used by the independent contractor to perform the work. *Clark*, 68 Ohio St.3d at 438, 628 N.E.2d 46; *see also Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 18. Accordingly, a hospital's mere granting of privileges to a doctor, which the hospital may later revoke under its procedures, does not permit a court to hold the hospital liable for the doctor's negligent acts under a theory of respondeat superior, or vicarious liability. *Albain [v. Flower Hospital]*, 50 Ohio St.3d 251, 553 N.E.2d 1038 [Ohio 1990], paragraph one of the syllabus.

However, we also have held that a hospital has a direct duty to grant and continue staff privileges only to competent doctors. *Id*. at paragraph two of the syllabus. Thus, a hospital has a duty to remove "a known incompetent." *Id*. at 258, 553 N.E.2d 1038.

9

*Schelling v. Humphrey*, 123 Ohio St. 3d 387, 390, 916 N.E.2d 1029, 1033 (Ohio 2009). "To prove a negligent-credentialing claim, a plaintiff injured by the negligence of a staff doctor must show that but for the lack of care in the selection or retention of the doctor, the doctor would not have been granted staff privileges, and the plaintiff would not have been injured." *Id.* (citing *Albain v. Flower Hospital*, 50 Ohio St.3d 251, 553 N.E.2d 1038 (Ohio 1990)).

The UC Defendants argue that Plaintiffs' negligent-credentialing claims must fail as a matter of law based upon Ohio's peer review statutes. Ohio Revised Code § 2305.251(B)(1) provides for a statutory presumption of non-negligence:

> A hospital shall be presumed to not be negligent in the credentialing of an individual who has, or has applied for, staff membership or professional privileges at the hospital pursuant to section 3701.351 of the Revised Code . . . if the hospital . . . proves by a preponderance of the evidence that, at the time of the alleged negligent credentialing of the individual, the hospital . . . was accredited by one of the following:
>
> (a) The joint commission on accreditation of healthcare organizations;
>
> (b) The American osteopathic association;
>
> (c) The national committee for quality assurance;
>
> (d) The utilization review accreditation commission.

Ohio Rev. Code § 2305.251(B)(1).

However, Ohio Revised Code § 2305.251(B)(1) does not provide "blanket immunity to a hospital for negligence in granting and/or continuing staff privileges of an incompetent physician." *Browning v. Burt*, 66 Ohio St. 3d 544, 562, 613 N.E.2d 993, 1007 (Ohio 1993). As Ohio Revised Code § 2305.251(B)(2) provides:

> The presumption that a hospital is not negligent as provided in division (B)(1) of this section may be rebutted only by proof, by a preponderance of the evidence, of any of the following:
>
> . . .
>
> (c) The hospital, . . . through its medical staff executive committee or its governing body and sufficiently in advance to take appropriate action, knew that a previously competent individual had developed a pattern of incompetence or otherwise inappropriate behavior, either of which indicated that the individual's staff membership, professional privileges, or participation as a provider should have been limited or terminated prior to the individual's provision of professional care to the plaintiff.
>
> (d) The hospital, . . . through its medical staff executive committee or its governing body and sufficiently in advance to take appropriate action, knew that a previously competent individual would provide fraudulent medical treatment but failed to limit or terminate the individual's staff membership, professional privileges, or participation as a provider prior to the individual's provision of professional care to the plaintiff.

Ohio Rev. Code § 2305.251(B)(2).

Plaintiffs have alleged that the UC Defendants (1) knowingly allowed Dr. Durrani to repeatedly violate their bylaws; (2) failed to adequately review or investigate Dr. Durrani's educational background, work history and peer reviews when he applied for privileges at West Chester Hospital; (3) ignored complaints about Dr. Durrani's treatment of patients after receiving reports from hospital staff, doctors, and the patients themselves; (4) ignored information regarding Dr. Durrani's privileges at other area hospitals. (Doc. 4, ¶ 793; ¶¶ 303-311, 317-319, 558, 572-587). This is the type of information, if known to the hospital through its medical staff executive committee or its governing body, would remove the statutory presumption of non-negligence which is provided by Ohio Revised Code § 2305.251(B)(1). As such, the Court concludes that Plaintiffs have stated a claim for negligent credentialing.

Therefore, the UC Defendants' Motion to Dismiss Plaintiffs' claim for negligent credentialing is DENIED.

### J. Negligent hiring, retention and supervision

Plaintiffs bring claims for negligent hiring, retention and supervision against Defendant CAST only.

In Ohio, negligent hiring, supervising, and retention are separate and distinct from other theories of tort recovery such as respondeat superior. *Simpkins v. Grace Brethren Church of Delaware*, 16 N.E.3d 687, 702-703 (Ohio Ct. App. 2014). Therefore, an employer can be held independently liable for negligently hiring, supervising, or retaining an employee. *Id.* (citing *Stephens v. A–Able Rents Co.*, 101 Ohio App.3d 20, 654 N.E.2d 1315 (Ohio Ct. App. 1995); *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (Ohio 1991).

Defendant CAST has not moved to dismiss Plaintiffs' claims of negligent hiring, retention and supervision. Therefore, CAST is not entitled to dismissal of this claim.

### K. Ohio Consumer Sales Practices Act

Plaintiffs bring claims under the Ohio Consumer Sales Practices Act ("OCSPA") against Defendant CAST and the UC Defendants.

The OCSPA prohibits "suppliers" from "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A). Defendants maintain that the Plaintiffs' claims under the Ohio Consumer Sales Protection Act are time-barred.

Claims under the OCSPA are subject to two-year statute of limitations. Ohio Rev. Code § 1345.10(C) (stating that any "action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the

violation which is the subject of suit."). As this Court has recognized, there is no discovery rule applicable to OCSPA claims. *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 506 (S.D. Ohio 2012) (citing *Jackson v. Sunnyside Toyota, Inc.*, 175 Ohio App. 3d 370, 887 N.E.2d 370 (Ohio Ct. App. 2008)).

Plaintiffs' surgeries occurred between August 6, 2010 and October 5, 2010. (Doc. 4, ¶¶ 5-6). Plaintiffs first filed their claims in Butler County Court of Common Pleas on April 15, 2013. Therefore, any claims brought by Plaintiffs under the OCSPA would be barred by the statute of limitations set forth in Ohio Revised Code § 1345.10(C).

Therefore, Defendant CAST and the UC Defendants' Motions to Dismiss Plaintiffs' claims under the OCSPA are GRANTED.

L. **Ohio Revised Code § 2923.32**

Plaintiffs bring claims for violations of Ohio Revised Code § 2923.32 against all Defendants.

This provision of the Ohio Revised Code is a part of Ohio's Racketeer Influenced and Corrupt Organizations Act ("RICO") statute, Ohio Revised Code §§ 2923.31, *et seq*. Ohio's RICO statute is "patterned after" the federal RICO statute. *Aaron v. Durrani*, No. 1:13-CV-202, 2014 WL 996471, at *8 (S.D. Ohio Mar. 13, 2014) (citing U.S. Demolition & Contracting v. O'Rourke, 94 Ohio App. 3d 75, 640 N.E.2d 235, 240 (Ohio Ct. App.1994)). Therefore, Ohio courts look to federal case law applying the federal RICO statute to determine how to apply the Ohio RICO statute. *Id*.

The Sixth Circuit has held that personal injuries are not injuries to "business or property," as required to state a claim under RICO. *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 565 (6th Cir. 2013). Because Plaintiffs are seeking recovery for

13

personal injuries stemming from the surgeries performed by Dr. Durrani, they cannot state a claim under Ohio's RICO statute. *Accord Aaron v. Durrani*, No. 1:13-CV-202, 2014 WL 996471, at *6 (S.D. Ohio Mar. 13, 2014).

Therefore, the Durrani Defendants and the UC Defendants' Motions to Dismiss Plaintiffs' claim under Ohio Revised Code § 2923.32 are GRANTED.

### III. CONCLUSION

Based upon the foregoing, Defendants UC Health and West Chester Hospital, LLC's Motion to Dismiss (Doc. 6); and Defendants Abubakar Atiq Durrani, MD, Center for Advanced Spine Technologies, Inc.'s Motion to Dismiss (Doc. 7) are **GRANTED in PART** and **DENIED in PART**.

**IT IS SO ORDERED.**

    */s/ Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court