**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Christopher Atwood, *et al.*,

       Plaintiff,                                              Case No. 1:16cv593

       v.                                                    Judge Michael R. Barrett

UC Health, *et al.*,

       Defendants.

**OPINION & ORDER**

This matter came for consideration of three motions filed by Defendants Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technology: Renewed Motion for Judgment as a Matter of Law (Doc. 780); Motion for New Trial (Doc. 781); and Motion to Alter Judgment or Amend the Judgments (Doc. 782). These motions have been fully briefed. (Docs. 812, 813, 814, 836).

**I.    BACKGROUND**

Plaintiffs are the former patients of Defendant Dr. Abubakar Atiq Durrani. Six of the plaintiffs proceeded to trial on their claims for negligence; battery; lack of informed consent; intentional infliction of emotional distress; and fraud. On October 12, 2018, the jury returned a verdict in favor of Plaintiffs Rebekah Brady, Robert Houghton, Michael Sander, David Shempert, Richard Allen Stanfield. (Docs. 758, 759, 761, 762, 763). The jury did not find in favor of Plaintiff Hiram McCauley. (Doc. 760).

On May 30, 2019, the Court held oral argument on the above motions and ruled from the bench on the majority of the issues. (Doc. 856). The Court will now reiterate those rulings and rule upon the remaining issues.

## II. ANALYSIS

### A. Standard of Review

#### 1. Renewed Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) allows a party to bring a motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed.R.Civ.P. 50(a)(2). If the district court denies the motion and the case is submitted to the jury, "the movant may file a renewed motion for judgment as a matter of law" within ten days after the entry of judgment on the verdict. Fed.R.Civ.P. 50(b). "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005).

#### 2. Motion for New Trial

Federal Rule of Civil Procedure 59(a) provides that a district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massilon, Ohio*, 78 F.3d. 1041, 1045-46 (6th Cir. 1996) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

### 3. Motion to Alter Judgments or Amend the Judgments

In the alternative, Defendants ask the Court to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). "A Rule 59(e) motion must present newly discovered evidence or clearly establish a manifest error of law." *D.E. v. John Doe*, 834 F.3d 723, 728 (6th Cir. 2016); *see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007). "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

Having set forth the applicable standards, the Court now turns to each of the arguments made in Defendants' motions.

### B. Durrani's indictment, flight and speedy trial waivers

Defendants argue that Durrani was denied a fair trial because the Court informed the jury of Durrani's criminal indictment in this Court and his subsequent flight to Pakistan. Defendants also argue that the Court erred in taking judicial notice the waivers of speedy trial signed by Durrani.

On the first day of trial during voir dire, the Court informed the potential jurors:

Dr. Durrani, who is the individual defendant in this case, he was indicted on August 7th, 2013, for various counts alleging a scheme to defraud by performing unnecessary surgeries and healthcare fraud.

Sometime after the case was filed, Dr. Durrani fled the jurisdiction to Pakistan. He will not be physically present during the trial. However, when defendants are charged with criminal offenses in this country, they are presumed innocent unless and until a jury unanimously decides otherwise.

At the conclusion of this case, I will be presenting the instructions of law on the various elements, that is the factors that make up the case, as well as instructions on evidentiary considerations. As I said before, often this

> cannot be determined until the evidence is complete. It is important and, in fact, you will take an oath to this effect, that you will follow the instructions of law presented to you during the case. At that time there will be an instruction as to whether and to what extent, if at all, you could consider Dr. Durrani's absence. Okay?

(Doc. 698, PAGEID# 28025). The Court gave this initial instruction regarding Durrani's absence out of an abundance of caution. Counsel for Durrani had complained of publicity about his client and the Court was concerned that the jury would inadvertently discover information about Durrani's criminal charges during trial. Later, at the close of the evidence, the Court instructed the jury:

> Dr. Durrani was indicted August 7, 2013 for various counts. The Indictment alleges a scheme to defraud by performing unnecessary surgeries and healthcare fraud. Sometime after the filing of the Indictment, he fled the jurisdiction to Pakistan. As you know Dr. Durrani, was not physically present in court. You saw his video testimony. The Indictment is not considered evidence, it is the charging document that notifies the defendant of the allegations against him. Dr. Durrani is presumed innocent unless and until a criminal jury would find him unanimously guilty. At the outset of the case, I explained I would give further instructions at the appropriate time. I instruct you that you may not consider Dr. Durrani's act of flight, taken alone, to determine his potential guilt in the criminal matter or his liability in this action because, on the one hand, this conduct may indicate that he thought he was guilty of criminal charges but on the other hand, sometimes an innocent person may flee for some other reason. The defendant has no obligation to prove he had an innocent reason for his flight conduct. Further, defendants in criminal cases have an absolute right not to testify. You have all probably heard "I'm taking the Fifth" and that cannot be considered by a jury in their determination. However, once the defendant waives or gives up that right by choosing to testify, and offers an explanation, then that defendant cannot selectively choose what questions to answer. Therefore, you are free to consider Dr. Durrani's actions of flight and to determine what inferences, if any, to draw regarding the defendant's credibility while testifying and the plausibility of his explanation. All of this is for you to determine what effect, if any, this has on your assessment of Dr. Durrani's testimony and credibility.

(Doc. 750, PAGEID# 29620-29621).

The Court notes that if Durrani had not absconded, he would have been within the subpoena power of Plaintiffs and would have been subject to in-court examination. At various times during the discovery process, Durrani played a "cat and mouse game" with Plaintiffs as to whether he would testify and under what conditions he would make himself available. By removing himself from the jurisdiction, he voluntarily chose not appear, yet he was able to "helicopter in" to trial by way of video-taped testimony. This, in and of itself, is unfair to Plaintiffs' case presentation. While Durrani's counsel maintained that Durrani fled because of safety concerns, Durrani himself told the jury that he left because he was denied a speedy trial in his criminal case. In a prepared statement he read at the outset of his videotaped deposition, Durrani stated: "Ladies and gentlemen, my repeated requests for a speedy trial were denied and the trial delayed time after time." (Doc. 728-1, PAGEID# 29038). Durrani reiterated his point later on cross-examination:

> . . . Why would I come into a system that didn't give me justice to begin with?
>
> Q. Well, you don't know whether you would have gotten justice or not because you left before there was a trial, correct?
>
> A. No. No. I -- I think my opening statement is very clear. I asked over and over again, give me a trial. Give me a trial. I was not hiding. I was not evading. It was not me who asked for a delay of the trial.

(Doc. 728-1, PAGEID# 29193). Plaintiffs requested that the Court take judicial notice of certain documents filed in Durrani's criminal proceedings which contradicted this testimony. The Court granted the request and supplied the jury with waivers of the speedy trial signed by Durrani and motions for trial continuances filed on behalf of Durrani in the criminal proceeding in this Court. The Court notes that not only are these filings a matter

5

of public record, but Durrani's counsel representing him in the civil matters was present at the requested continuance hearings in the criminal proceedings in this Court.

Pursuant to Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Landt v. Farley*, 2012 WL 4473209, *1 (N.D.Ohio Sept. 26, 2012) (noting that the "court may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the PACER system and via the internet.") (quotation marks and citation omitted). Here, Defendants do not question the accuracy of the waivers and motions for continuances, but instead argue that the evidence of the indictment was highly prejudicial. However, as the Sixth Circuit has explained: "Although prejudice that affects the fairness of a proceeding can certainly be grounds for a new trial, when 'such prejudice is cured by instructions of the court, the motion for a new trial should be denied.'" *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1046-47 (6th Cir. 1996) (quoting *Clarksville–Montgomery County Sch. Sys. v. United States Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir.1991)). Here, the jury was instructed that the indictment was not evidence, and Durrani's flight alone was not an indication of his guilt, or his liability in this case. Instead, the jury was instructed to consider Durrani's credibility in light of the waivers and motions for continuances filed on behalf of Durrani in this Court. Because the instructions cured any prejudice, Defendants are not entitled to a new trial on this basis.

C. **Evidence Durrani's medical license had been revoked**

Defendants argue that evidence that Durrani's medical license had been revoked was not admissible. However, it was Durrani himself who told the jury that his license was revoked in Ohio and Kentucky. (Doc. 728-1, PAGEID# 29035-29036). As part of a prepared statement he read during his video deposition, Durrani explained that after he was indicted:

> the Ohio Medical Board suspended my license citing that during the raid they found signed scripts in my office, which was against the law.
>
> I was simply shocked. This is a very, very common practice in every medical office where surgeons will leave signed scripts with their nurses who authorize refills on patients' medications while they were in the operating room or out of town for any reason after they give approval for those refills.
>
> This could have been simply dealt with a simple warning, but to take away someone's license over this seems extremely unfair.
>
> This meant that I had to shut down my practice in Ohio. And this was all over signed scripts for genuine patients for genuine medication refills.
>
> Soon after the -- soon after that the Kentucky board, due to the reciprocity clause in between the two boards, filed suit at the behest of Mr. Deters. This effectively meant that I had to shut down my practice and I had no means left to practice my profession or earn a livelihood.

(Doc. 728-1, PAGEID# 29031, 29035-29036). At the end of his reading of the prepared statement, counsel for Plaintiffs objected and moved to strike the statement, but the Court later overruled the objection and the testimony was presented to the jury. (Doc. 728-1, PAGEID# 29040). Defendants argue that if the Court had not informed the jury of the criminal indictment filed against Durrani and his subsequent flight, then Durrani would have never needed to make these statements. However, the Court instructed the potential jurors during voir dire that "when defendants are charged with criminal offenses

7

in this country, they are presumed innocent unless and until a jury unanimously decides otherwise." (Doc. 698, PAGEID# 28025). Rather than trust that the jury would follow this instruction, Durrani voluntarily chose to inform the jury that his medical license had been revoked in two different states in an attempt to explain why he fled the country. As explained above, any prejudice Durrani created with his own testimony was cured by the Court's instruction: "I instruct you that you may not consider Dr. Durrani's act of flight, taken alone, to determine his potential guilt in the criminal matter or his liability in this action because, on the one hand, this conduct may indicate that he thought he was guilty of criminal charges but on the other hand, sometimes an innocent person may flee for some other reason." (Doc. 750, PAGEID# 29620-29621). Juries are presumed to follow the court's instructions. *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841, 129 S. Ct. 2139, 2141, 173 L. Ed. 2d 1184 (2009). Therefore, Defendants are not entitled to a new trial on this basis.

### D. <u>Withdraw of fraud and battery claims</u>

Defendants argue that the Court should have informed the jury that Plaintiffs had withdrawn their fraud and battery claims. During oral argument on Defendants' motions, the Court explained that the jury instructions did not include the fraud claims and the jury was instructed to consider only the claims actually provided to them in the final instructions at the close of the case. Therefore, there were no fraud or battery claims presented to the jury for consideration and no interrogatories were provided to them in that regard. Defendants were not prejudiced by the lack of instruction regarding withdrawal of claim. In fact, in the responses to the interrogatories, the jury indicated that

8

it did not find lack of informed consent, which was the gravamen of the fraud claims. (See Doc. 757).  Therefore, Defendants are not entitled to a new trial on this basis.

**E. <u>Consolidating claims for trial</u>**

Defendants maintain that the Court erred by consolidating the claims of six individual plaintiffs for trial.  Defendants explain that consolidating the claims allowed each Plaintiff to rely on the allegations made by other Plaintiffs rather than the medical evidence in that Plaintiff's case.

Federal Rule of Civil Procedure 42(a) permits consolidation of actions involving common questions of law or fact.  Fed. R. Civ. P. 42(a) ("If actions before the court involve a common question of law or fact, the court may . . . join for hearing or trial any or all matters at issue in the actions."); *see also Cantrell v. GAF Corp.*, 999 F.2d 1007,1011 (6th Cir. 1993) (explaining "[w]hether cases involving the same factual and legal questions should be consolidated for trial is a matter within the discretion of the trial court.").  In deciding whether to consolidate claims, a court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (quoting *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).  The Court grouped Plaintiffs' claims based upon the type of surgery performed and overlapping expert testimony.  The Court's determination of common questions of law and fact were borne out by Defendants' own witnesses.  The Court's trial notes indicate that on direct examination by defense counsel, Dr. Barakas opined that there was a pattern in the cases and they were all quite similar.  In discussing Plaintiff Sanders'

9

file in particular, Dr. Barakas found it very similar to the previous files. Dr. Barakas further testified that patient imaging studies were consistent throughout Plaintiffs' patient files. Dr. Biscup, another defense witness, also testified as to the similarities in the symptoms and treatment of all six plaintiffs. The jury's interrogatory answers confirm that the jury differentiated where appropriate between each of the individual patients. Both Plaintiffs' and Defendants' expert witnesses individually opined as to the individual cases. In other words, each sides' experts addressed all six of the patient files. The experts on both sides testified as to the many similarities of the symptoms, diagnosis and treatments rendered. Again, the jury's individualized verdicts belie the argument of prejudice. Therefore, Defendants are not entitled to a new trial on this basis.

### F. Punitive damages

Defendants argue that the Court erred by failing to bifurcate punitive damages and allowing simultaneous evidence of all six plaintiffs' punitive damages claims.

Federal Rule of Civil Procedure 42 provides that a court may order a separate trial of separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). As this Court has explained:

> The decision to bifurcate lies within the sound discretion of the district court. *Saxio v. Titan–C–Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir.1996) (citing *Davis v. Freels*, 583 F.2d 337, 343 (7th Cir.1978)). However, bifurcation is "the exception to the general rule" that favors resolving disputes in a single proceeding. *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, 2008 WL 4823069, at *2 (S.D.Ohio) (citing *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir.1978)). A bifurcation decision should be grounded in the facts and circumstances of the individual case. *Saxio*, 86 F.3d at 556. A court's analysis of the case's facts and circumstances should include "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)).

10

*Wolkosky v. 21st Century Centennial Ins. Co.*, No. 2:10-CV-439, 2010 WL 2788676, at *3 (S.D. Ohio July 14, 2010). Here, the jury's answers to the interrogatories confirm that the jury differentiated between the various plaintiffs. Moreover, the jury did not find in favor of all six plaintiffs. Therefore, Defendants are not entitled to a new trial on this basis.

### G. Statute of repose

Defendants request reconsideration of the Court's pretrial ruling on the applicability of the statute of repose. (See Doc. 568). However, a motion made under Rule 59(e) is not an opportunity to reargue a case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citation omitted). A court should use its "informed discretion" in deciding whether to grant or deny a Rule 59(e) motion. *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). As the Court explained during oral argument on the motions, the Court stands by its previous ruling. In addition, the First District Court of Appeals for the State of Ohio has recently held that "Ohio's saving statute, properly invoked, allows actions to survive beyond expiration of the medical malpractice statute of repose." *Wilson v. Durrani*, 2019 WL 4678286, *1 (Sept. 25, 3019). Therefore, Defendants' motions are DENIED on this basis.

### H. Future medical expenses and future pain and suffering

Defendants request that the Court review, in the first instance, the award of future medical expenses and future pain and suffering (Docs. 780 and 781); and in the second instance, reduce any such amount if appropriate (Doc. 782).

Under Ohio law, where a case involves a subjective injury, "expert medical testimony is needed to prove future pain and suffering or permanency." *Marzullo v. J.D. Pavement Maint.*, 975 N.E.2d 1, 11-12 (Ohio Ct. App. 2011) (quoting *Roberts v. Mut. Mfg.*

*& Supply Co.*, 16 Ohio App.3d 324, 475 N.E.2d 797 (Ohio Ct. App 1984)). "The probability of future pain and suffering must be demonstrated by expert testimony when the nature of the injury is not obvious." *Id.* (citing *Corwin v. St. Anthony Med. Ctr.*, 80 Ohio App.3d 836, 841, 610 N.E.2d 1155 (Ohio Ct. App. 1992)).

Here, Plaintiffs presented the testimony of Dr. Wilkey as expert testimony regarding the pain and suffering which Plaintiffs will endure in the future. (Docs. 719-1, 719-2).

Defendants argue even if this medical testimony could sustain a verdict for future medical expenses, the amount of future medical expenses, future pain and suffering, and punitive damages was excessive.

The Sixth Circuit has instructed that:

> a jury verdict should not be remitted by a court "unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Jackson v. City of Cookeville*, 31 F.3d 1354, 1358 (6th Cir.1994) (citing *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir.1990)). *See also In re Lewis*, 845 F.2d 624, 635 (6th Cir.1988) (quoting *Manning v. Altec, Inc.*, 488 F.2d 127, 133 (6th Cir.1973)). As we have held, an award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake. *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 156 (6th Cir.1996) (citing *Leila Hosp. & Health Ctr. v. Xonics Medical Sys.*, 948 F.2d 271, 278 (6th Cir.1991)).

*Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 443 (6th Cir. 2000). The verdicts these in cases are not unreasonable. Out of six plaintiffs, five received awards and one resulted in a defense verdict. Plaintiffs themselves testified as to their ongoing pain and continuing condition which resulted in an adverse impact upon the quality of their lives. Plaintiffs solicited opinion testimony as to the need for future medical intervention. The jurors were made aware of past costs associated with these types of procedures and further, the

12

verdicts confirm that the jury differentiated among Plaintiffs. The jury's work and individual consideration of each patient file relieves this Court from any concerns of bias, prejudice, sympathy or unfounded awards. The jury verdicts are not against the manifest weight of the evidence and the awards of punitive damages are not grossly excessive based upon the testimony elicited in court. Therefore, Defendants' motions are DENIED on this basis.

**I. Form of interrogatories**

Defendants argue that they were prejudiced by the Court's interrogatories listing the potential basis for the alleged negligence. Defendants insist that the jury should have been required to provide a narrative explanation for each of these findings instead of responding "yes" or "no."

"Whether a court uses a special or general verdict rests in its discretion, as does the content and form of any interrogatories it chooses to submit." *Bills v. Aseltine*, 52 F.3d 596, 605 (6th Cir. 1995) (citing *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1520 (6th Cir. 1990)). In the instant case, the jury was instructed to support any finding of negligence by determining whether the negligence arose from one or more of the following: overstated radiological findings, fabricated diagnoses, misdiagnoses, unnecessary surgery, failing to prescribed a course of conservative care, selecting improper surgical procedure or failure to complete operative reports. The jury supported their findings of negligence by designating and stating affirmatively the reason for their decision. All the verdicts varied as to the various reasons for their findings, but in all five of the plaintiffs' verdicts finding negligence, the jury checked "yes" for misdiagnosis, selecting improper surgical procedure and untimely post-op reports as the basis for the

negligence findings. Interrogatories must be considered in the context of the entire jury charge. 52 F.3d at 605 (citing *United States v. Buckley*, 934 F.2d 84, 87 (6th Cir.1991)). In that context, the Court finds that the interrogatories directed the jury's attention to the most important issues and the format had no bearing on their determination of those issues. Therefore, Defendants' motions are DENIED on this basis.

### J. <u>Set off</u>

During trial, Defendants UC Health and West Chester Hospital ("UC Defendants"). settled the negligent credentialing claims Plaintiffs brought against them. Defendants assert that they are entitled to a set off for any settlement agreed upon between Plaintiffs and the UC Defendants. Defendants rely on Ohio's statutory set-off rule, Ohio Revised Code § 2307.28(A), which provides:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons for the same injury or loss to person or property or the same wrongful death, both of the following apply:
>
> (A) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of the greater of any amount stipulated by the release or the covenant or the amount of the consideration paid for it, except that the reduction of the claim against the other tortfeasors shall not apply in any case in which the reduction results in the plaintiff recovering less than the total amount of the plaintiff's compensatory damages awarded by the trier of fact and except that in any case in which the reduction does not apply the plaintiff shall not recover more than the total amount of the plaintiff's compensatory damages awarded by the trier of fact.
>
> (B) The release or covenant discharges the person to whom it is given from all liability for contribution to any other tortfeasor.

Ohio Rev. Code § 2307.28. However, for the statute to apply, the parties must be joint tortfeasors. *Clevecon, Inc. v. Ne. Ohio Reg'l Sewer Dist.*, 90 Ohio App. 3d 215, 223, 628

14

N.E.2d 143, 148 (1993) (citing Ohio Rev. Code § 2307.32(F), which is the predecessor to Ohio Rev. Code § 2307.28(A)).

In another context, the Ohio Supreme Court has made it clear that negligent credentialing and medical malpractice are separate claims:

> claims asserted against a hospital for negligent credentialing do not arise out of the medical diagnosis, care, or treatment of a person. Negligent credentialing claims arise out of the hospital's failure to satisfy its independent duty to grant and continue staff privileges only to competent physicians. This independent duty does not directly involve diagnosis or the medical care and treatment of a patient. While the acts or omissions of a hospital in granting and/or continuing staff privileges to an incompetent physician may ultimately lead to an act of medical malpractice by the incompetent physician, the physician's ultimate act of medical malpractice is factually and legally severable and distinct from the hospital's acts or omissions in negligently credentialing him or her with staff membership or professional privileges.

*Browning v. Burt*, 66 Ohio St. 3d 544, 557, 613 N.E.2d 993, 1003-1004 (Ohio 1993). In addition, the Ohio Supreme Court has explained that punitive damages "are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Arbino v. Johnson & Johnson*, 116 Ohio St. 3d 468, 488, 880 N.E.2d 420, 441 (Ohio 2007) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). "The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct." Id. (quoting *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 651, 635 N.E.2d 331 (Ohio 1994). Therefore, the punitive damages awarded to Plaintiffs are separate and apart from any remedy for their injuries. Accordingly, the jury verdict and the settlement with the UC Defendants address different injuries to Plaintiffs. As a result, Ohio Revised Code § 2307.28(A) does not apply here. *Accord Rui He v. Rom*, No. 1:15-CV-1869, 2017

15

WL 1054814, at *9 (N.D. Ohio Mar. 21, 2017), *aff'd*, 751 F. App'x 664 (6th Cir. 2018). Therefore, Defendants' motions are DENIED on this basis.

### III. CONCLUSION

Based on the foregoing, Defendants Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technology's Renewed Motion for Judgment as a Matter of Law (Doc. 780); Motion for New Trial (Doc. 781); and Motion to Alter Judgment or Amend the Judgments (Doc. 782) are **DENIED**.

**IT IS SO ORDERED.**

                                                */s/ Michael R. Barrett*
                                                JUDGE MICHAEL R. BARRETT