**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Christopher Atwood, *et al*.,

        Plaintiff,                             Case No.  1:16cv593

        v.                                   Judge Michael R. Barrett

UC Health, *et al*.,

        Defendants.

## OPINION & ORDER

This matter is before the Court upon Defendants Abubakar Atiq Durrani and the Center for Advanced Spine Technologies, Inc.'s ("CAST") Motion for Judgment as a Matter of Law, or in the Alternative, for Remittitur or a New Trial. (Doc. 1023). This motion has been fully briefed. (Docs. 1034, 1040).

## I.    BACKGROUND

Plaintiffs Christopher Atwood and Jennifer Hickey are the former patients of Defendant Dr. Abubakar Atiq Durrani. On July 16, 2021 the jury returned a verdict in their favor on their claims of negligence brought against Durrani and CAST. (Docs. 1011, 1012). The finding of negligence was based on overstated radiological findings, fabricated diagnosis, misdiagnosis, unnecessary surgery, failure to prescribe course of conservative care, selecting improper surgical procedure, improper placement of surgical hardware, untimely operative reports, and lack of informed consent. (Docs. 1011, 1012). The jury awarded Christopher Atwood a total of $891,208.99 in economic and non-economic damages (Doc. 1011, PAGEID 36161) and $1,000,000.00 in punitive damages (Doc. 1011, PAGEID 36165). The jury awarded Hickey a total of

$2,687,819.62 in economic and non-economic damages (Doc. 1012, PAGEID 36173) and $2,000,000.00 in punitive damages (Doc. 1012, PAGEID 36177).

## II.   ANALYSIS

### A. Standard of Review

#### 1.  Renewed Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) allows a party to bring a motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed.R.Civ.P. 50(a)(2).  If the district court denies the motion and the case is submitted to the jury, "the movant may file a renewed motion for judgment as a matter of law" within ten days after the entry of judgment on the verdict.   Fed.R.Civ.P. 50(b).[1] "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all

---

[1]It appears from the docket that Defendants may have orally renewed their motion after the jury rendered their verdict (Doc. 1008), but Defendants' Rule 50 motion was clearly filed more than ten days after the entry of judgment on the verdict (Docs. 1016, 1017).  "Where a party's Rule 59 motion is not filed within the mandatory 10-day period, it is appropriate for a court to consider the motion as a motion pursuant to Rule 60 for relief from judgment."  *Feathers v. Chevron U.S.A.*, 141 F.3d 264, 268 (6th Cir.1998).  "The standard for granting a Rule 60 motion is significantly higher than the standard applicable to a Rule 59 motion." *Id*. (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied*, 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992)).  Nevertheless, Defendants filed an alternative motion for a new trial under Rule 59, which calls for a different standard:

> Contrasting Rule 59 with Rule 50, generally, "motions made pursuant to Rule 50 ... claim there is insufficient evidence to send a case to a jury ... [while] Rule 59 motions ... claim that the jury verdict was against the weight of the evidence." *Hillside Prods., Inc. v. Cnty. of Macomb*, 389 F. App'x 449, 456 (6th Cir. 2010) (emphasis in original). Thus, "granting a judgment as a matter of law is governed by a higher showing" than granting a new trial. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007).

*Gillispie v. City of Miami Twp.*, No. 3:13-CV-416, 2023 WL 4868486, at *7 (S.D. Ohio July 31, 2023).  Defendants set forth the same grounds for their Rule 59 and Rule 50 motions. Therefore, if a new trial is improper, Defendants would not be entitled to a judgment as a matter of law.

reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005).

**2.** **Motion for New Trial**

Federal Rule of Civil Procedure 59(a) provides that a district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massilon, Ohio*, 78 F.3d. 1041, 1045-46 (6th Cir. 1996) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

Having set forth the applicable standards, the Court now turns to the arguments made in Defendants' motion.

**B.** **Statute of repose**

Defendants argue that Plaintiffs' claims are barred by the statute of repose.[2]

Ohio's statute of repose provides that "[n]o action upon a medical ... claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical ... claim." Ohio Rev. Code § 2305.113(C)(1). Durrani operated on Atwood on September 22, 2010. (Doc. 4, PAGEID

---

[2]This Court previously ruled that Ohio Revised Code § 2305.19(A) "saved" Plaintiffs' claims. *Atwood v. UC Health*, No. 1:16CV593, 2018 WL 3956766, at *8 (S.D. Ohio Aug. 17, 2018). However, after this ruling, in *Wilson v. Durrani*, 2020 WL 7636010 (Ohio Dec. 23, 2020), the Supreme Court of Ohio held that the savings statute does not save medical claims when the statute of repose applies.

739, ¶ 31). Durrani operated on Hickey on April 19, 2010 and October 1, 2010. (Doc. 4, PAGEID 743-744, ¶¶ 76, 81). Plaintiffs' claims were initially filed in the Butler County Court of Common Pleas in 2013 and 2014; but were voluntarily dismissed and then filed in this Court on May 2, 2016. (Doc. 4, PAGEID 734).

This Court has held that Ohio Revised Code § 2305.15(A) tolls the limitations period contained in Ohio Revised Code 2305.113(C). *Landrum v. Durrani*, Case No. 1:18-cv-807, 2020 WL 3512808 at *4 (S.D. Ohio Mar. 25, 2020) (Dlott, J.); *see also Stidham v. Durrani*, Case No. 1:18-CV-810, 2021 WL 2013024, at *4 (S.D. Ohio May 19, 2021) (Black, J.); *Mahlenkamp v. Durrani*, Case No. 1:18-cv-817, 2021 WL 2012939 at *3 (S.D. Ohio May 19, 2021) (Black, J.); *Sterling v. Durrani*, Case No. 1:18-cv-802, 2021 WL 2013012 at *3 (S.D. Ohio May 19, 2021) (Black, J.); *Powers v. Durrani*, Case No. 1:18-cv-788, 2020 WL 5526401 at *1 (S.D. Ohio Sep. 15, 2020) (McFarland, J.). The statute provides:

> When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.35 of the Revised Code does not begin to run until the person comes into the state or while the person is so absconded or concealed. After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.

Ohio Rev. Code § 2305.15(A). Here, Durrani fled to Pakistan in November 2013 and has not returned to Ohio since that time. Therefore, the statute of repose is tolled during the time Durrani was "out of the state, has absconded, or conceal[ed] [him]self." As a consequence, Plaintiffs' claims against Durrani are not barred by the statute of repose.

4

However, Durrani's flight does not toll the statute of repose as applied to CAST. *Brown v. Durrani*, No. 1:18CV785, 2021 WL 2779154, at *3 (S.D. Ohio July 2, 2021); *Elliot v. Durrani*, 178 N.E.3d 977, 989 (Ohio Ct. App. 2021) (explaining that "the tolling provision in R.C. 2305.15(A) applies only to claims against Durrani and not to claims against CAST.").

Therefore, Defendants' Motion is GRANTED in PART and DENIED in PART on this basis. Accordingly, Defendant CAST is DISMISSED as a party to this litigation.

## C. Statute of limitations

Defendants argue that Hickey's claim is barred by Ohio's one-year statute of limitations for medical claims.[3]

Under Ohio Revised Code § 2305.113(A), an action upon a medical claim "shall be commenced within one year after the cause of action accrued." This limitations period begins to run either "(1) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (2) when the physician-patient relationship for the condition terminates, whichever occurs later." *Akers v. Alonzo*, 65 Ohio St. 3d 422, 424-25, 605 N.E.2d 1, 3 (Ohio 1992). Defendants maintain that this statute of limitations began to run no later than March 29, 2011, which is the date of Hickey's last visit with Durrani. Defendants explain Hickey did not file her first malpractice action until April 15, 2013.[4]

---

[3]Defendants raised this same issue in their oral Rule 50 motion at the close of all evidence. (Doc. 1022, PAGEID 36629).

[4]This first case was filed in state court in Butler County, Ohio. Plaintiffs explain what happened after the case was filed: "On November 25, 2015, Ms. Hickey dismissed her Butler County case without prejudice, pursuant to Rule 41(A)(1)(a) of the Ohio Rules of Civil Procedure. On May 2, 2016, Ms. Hickey refiled her claims in the Hamilton County Court of Common Pleas, styled Atwood v. Durrani, Case No. A1602537. Complaint, Doc.#4,

Plaintiffs respond that the discovery rule applies in this instance. As one Ohio court has explained:

> Under the discovery rule, the accrual of the cause of action depends upon the existence of a "cognizable event." "A 'cognizable event' is the occurrence of facts and circumstances which lead, or should lead, the patient to believe that the physical condition or injury of which she complains is related to a medical diagnosis, treatment or procedure that she previously received." *Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1992), *citing Allenius v. Thomas*, 42 Ohio St.3d 131, 538 N.E.2d 93 (1989), syllabus. "Constructive knowledge of facts, rather than actual knowledge of their legal significance" is sufficient under the discovery rule. *Flowers* at 549, 589 N.E.2d 1284. The "cognizable event * * * puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies." *Id.*

*Hensley v. Durrani*, 2013 WL 5777076 *3 (Ohio Ct. App. Oct. 25, 2013).

Defendants maintain that even under the discovery rule, Hickey's claims are still barred. Defendants point out that Hickey testified at trial that before her March 29, 2011 visit with Durrani, she "thought Dr. Durrani may have done something wrong." (Doc. 1020, PageID 36506).[5] However, it is undisputed that after March 29, 2011, Hickey

---

PageID#743-745. On May 31, 2016, this case was removed to this Court pursuant to its diversity of citizenship jurisdiction." (Doc. 1034, PAGEID 36985).

[5]This testimony was part of Hickey's cross-examination during trial:

Q. Okay. And before the last time you saw Durrani, you mentioned to him that something was wrong with the surgery, didn't you?

A. I don't remember my exact words, but I did remember speaking with Durrani that something was wrong.

Q. Yeah. And you thought Dr. Durrani may have done something wrong, correct?

A. That is correct.

Q. The last time you saw him?

A. That is correct.

(Doc. 1020, PAGEID 36506).

continued to be treated by Dr. Tayeb, a pain management specialist at CAST and was also seen by a neurologist, Dr. Mulla-Ossmann. (Doc. 1020, PAGEID 36451, 36452-54).[6]

This continued treatment by other physicians is relevant to the cognizable-event analysis. As the Ohio Supreme Court has explained: "The cognizable-event analysis allows a patient to reasonably rely on his physician's assurances while placing a continuing duty on the medical profession to act with the requisite skill and care." *Herr v. Robinson Mem'l Hosp*., 49 Ohio St. 3d 6, 9-10, 550 N.E.2d 159, 162 (Ohio 1990). This is because "the causes of medical problems and the effects of prescribed treatments are not within the realm of a layman's knowledge." *Id*. Therefore, "[t]he patient relies almost wholly upon the judgment of the * * * [doctor], and under the usual circumstances of each case is bound to do so." *Id*. (quoting *Bowers v. Santee*, 99 Ohio St. 361, 366, 124 N.E. 238, 240 (Ohio 1919)). "Therefore, in determining the cognizable event, the court must consider a patient's reasonable reliance upon the assurances from a treating physician who continues to treat the patient and is alleged to have committed the malpractice." *Peters v. Akron Gen. Med. Ctr*., 2020 WL 563547 (Ohio Ct. App. Feb. 5, 2020) (citing *Herr*, 550 N.E.2d at 162). "Also relevant is a patient's

---

[6]After Defendants made their oral Rule 50 motion, counsel for Plaintiffs responded as follows:

> So I don't believe that anything occurred that, one, would alert her that a cognizable event had occurred that would start the statute of limitations running, and she continued to treat with Dr. Durrani, Dr. Tayeb, and CAST. She was never released from Dr. Durrani's care. The release came when he decided to close his office and leave the country, which was well into 2013.

(Doc. 1022, PAGED ID 36633). At that time, this Court ruled: "I think the medical records compiled by Dr. Durrani's conversations with this witness mask, to paraphrase plaintiffs' counsel, mask the situation. I don't think she was put on notice." (Doc. 1022, PAGEID 36634).

reasonable reliance upon the assurances from concurrent and/or subsequent treating physicians against whom malpractice is not alleged." *Id*. (citing cases).

Based on this guidance, this Court cannot conclude that Hickey's "thought" in 2011 that Durrani "may have done something wrong" served as a cognizable event. As a layperson, the cause of her medical problems was not within the realm of her knowledge. There is no conclusive evidence in the record which demonstrates that Hickey believed her pain was related to the surgery Durrani performed on her until she went to the Mayfield Clinic for a second opinion in March of 2013. (Doc. 1020, PAGEID 36455). In addition, the Court considers Hickey's reliance on the assurances from Dr. Tayeb and her other treating physicians to be reasonable. There is no evidence that any of these doctors put Hickey "on notice to investigate the facts and circumstances relevant to her claim."

Therefore, Defendants' Motion is DENIED on this basis.

**D. <u>Judicial estoppel</u>**

Defendants argue that Hickey's claims are barred by judicial estoppel because she failed to include her claim in the schedule of assets when she filed for bankruptcy in January 2012.

"Courts have generally applied judicial estoppel against claims that debtors fail to disclose in their bankruptcy filings to prevent debtors from disclaiming causes of action in order to minimize their assets in bankruptcy proceedings." *McGruder v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 99 F.4th 336, 342 (6th Cir. 2024) (citing *Lewis v. Weyerhaeuser Co*., 141 F. App'x 420, 428 (6th Cir. 2005); *Davis v. Dist. of Columbia*, 925 F.3d 1240, 1255–56 (D.C. Cir. 2019)). As this Court has explained:

> In the bankruptcy context, the Sixth Circuit has articulated three considerations that are typically relevant when determining if judicial estoppel should apply: (1) the party asserts a position that was contrary to the one the party had asserted under oath in a prior proceeding; (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the party's omission was not a result of mistake or inadvertence. *White v. Wyndham Vacation Ownership, Inc*., 617 F.3d 472, 476 (6th Cir. 2010).

*Couch v. Certified Flooring Installation, Inc*., 439 F. Supp. 3d 964, 971 (S.D. Ohio 2020).

As to the third consideration, "a party's failure to disclose could be deemed a mistake or inadvertent if: (1) the party lacked knowledge of the factual basis of the undisclosed claims; (2) the party had no motive for concealment; and (3) there is an absence of bad faith." *Id*. With regards to bad faith, this Court has explained:

> the bad faith analysis for applying judicial estoppel in the bankruptcy context generally focuses on three attributes: effort, effectiveness, and timing. To avoid estoppel, a party generally must show they made a good-faith, effective effort to inform the bankruptcy court about the potential claim. *See*, *e.g*., *Eubanks v. CBSK Fin. Grp., Inc*., 385 F.3d 894, 898–99 (6th Cir. 2004). Likewise, a court is less inclined to find bad faith when the party attempted to inform the bankruptcy court about the potential action before a motion to dismiss forced the party's hand. *See*, *e.g*., *Newman v. Univ. of Dayton*, 751 F. App'x 809, 814–15 (6th Cir. 2018).

*Id*. at 972.

The Court finds no evidence of bad faith. Hickey filed for Chapter 13 bankruptcy in 2012 before she had knowledge of her claims in this case. Her bankruptcy case remained open until 2017. *In re Jennifer M. Hickey*, Case no. 2:12-bk-20069 (E.D. Ky.) (Doc. 40). On January 8, 2020, Hickey filed a motion to reopen her bankruptcy case to disclose the proceeds of the settlement reached with another party in this case. (Doc. 41). The bankruptcy court granted the motion on January 14, 2020. (Doc. 45). On March 24, 2020, a second final decree was entered and the bankruptcy case was

closed.  (Doc. 49).  Therefore, Hickey made a good-faith, effective effort to inform the bankruptcy court about the potential claim.  These efforts were not in response to a motion filed by Defendants, but instead appear to be based on the realization that Hickey had made a mistake in not listing the claim.  *See Couch v. Certified Flooring Installation, Inc*., 439 F. Supp. 3d 964, 974–75 (S.D. Ohio 2020).

Therefore, Defendants' Motion is DENIED on this basis.

### E. Caps on non-economic and punitive damages

Pursuant to Ohio Revised Code 2315.18(B)(2), the amount of damages available in a tort action for noneconomic loss is limited to the greater of $250,000.00 or an amount that is equal to three times the economic loss, but with a maximum of $350,000.00.[7]  Ohio Revised Code 2323.43(A)(2) places the same caps on the amount of noneconomic damages available for medical-malpractice claims.  Finally, the maximum amount of punitive damages which can be awarded against "a small employer or individual" is $350,000.00.  Ohio Rev. Code § 2315.21(D)(2)(b).[8]

---

[7]The statute provides:

Except as otherwise provided in division (B)(3) of this section, the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action under this section to recover damages for injury or loss to person or property shall not exceed the greater of two hundred fifty thousand dollars or an amount that is equal to three times the economic loss, as determined by the trier of fact, of the plaintiff in that tort action to a maximum of three hundred fifty thousand dollars for each plaintiff in that tort action or a maximum of five hundred thousand dollars for each occurrence that is the basis of that tort action.

Ohio Rev. Code § 2315.18(B)(2).

[8]The statute provides: "If the defendant is a small employer or individual, the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten per cent of the employer's or individual's net worth when the tort was committed up to a maximum of

While the parties agree the amounts of noneconomic and punitive damages awarded to Plaintiffs are subject to these limits, neither party has cited to these statutes and instead cite to "R.C. 2305.18(B)(2) and R.C. 2305.21(D)(2)(b)." (See Doc. 1023, PAGEID 36772; Doc. 1034, PAGEID 36996). These statutes are inapplicable to the issue of damages. Nevertheless, the parties agree the properly remitted damages amounts are as follows:

| Atwood: | $108,608.99 (economic) |
| | $325,826.97 (non-economic damages) |
| + | $350,000.00 (punitive damages) |
| | $784,435.96 (total judgment) |

| Hickey: | $158,019.62 (economic) |
| | $350,000.00 (non-economic damages) |
| + | $350,000.00 (punitive damages) |
| | $858,019.62 (total judgment) |

Therefore, Defendants' Motion is GRANTED on this basis and the judgments will be amended to reflect these adjusted amounts.

## F. Set off based on settlement

Before trial, Plaintiffs settled their claims against Defendants West Chester Hospital and UC Health. These claims were negligence, negligent credentialing, fraud, spoliation of evidence, violation of Ohio Consumer Sales Protection Act and violation of Ohio Revised Code § 2923.32. (Doc. 4). Defendants maintain that they are entitled to a setoff from Plaintiffs' settlement with these other defendants pursuant to Ohio Revised Code § 2307.28, which provides that when a release is given to one of two or more

three hundred fifty thousand dollars, as determined pursuant to division (B)(2) or (3) of this section." Ohio Rev. Code § 2315.21(D)(2)(b).

persons "for the same injury or loss to person," the release "reduces the claim against the other tortfeasors to the extent of the greater of any amount stipulated by the release or the covenant or the amount of the consideration paid for it . . ." Ohio Rev. Code § 2307.28(A).[9]

This Court has previously concluded that the claim for negligent credentialing which Plaintiffs settled with West Chester Hospital and UC Health is not based on the "same injury or loss" as the claim for negligence brought against Durrani and CAST. *Atwood v. UC Health*, Case No. 1:16CV593, 2024 WL 4171173, at *2 (S.D. Ohio June 17, 2024). The Court concluded that setoff was not required. *Id*. However, the Court finds this was in error based on a subsequent decision of the Ohio First District Court of Appeals in another medical-malpractice lawsuit brought against Defendants:

> We agree that [negligent credentialling and negligence] are distinct theories of liability. However, Ms. McCann has suffered a single, combined injury arising from appellants' malpractice and the hospital defendants' alleged negligence. And the setoff statute's focus is on the

---

[9]The statute provides in full:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons for the same injury or loss to person or property or the same wrongful death, both of the following apply:

(A) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of the greater of any amount stipulated by the release or the covenant or the amount of the consideration paid for it, except that the reduction of the claim against the other tortfeasors shall not apply in any case in which the reduction results in the plaintiff recovering less than the total amount of the plaintiff's compensatory damages awarded by the trier of fact and except that in any case in which the reduction does not apply the plaintiff shall not recover more than the total amount of the plaintiff's compensatory damages awarded by the trier of fact.

Ohio Rev. Code § 2307.28. There is a "narrow legislative exception" which prevents an intentional tortfeasor from benefitting from the setoff. *McCann v. Durrani*, 227 N.E.3d 471, 483 (Ohio Ct. App. 2023) (citing *Adams v. Durrani*, 183 N.E.3d 560, 575 (Ohio Ct. App. 2022). However, Plaintiffs did not pursue any intentional tort claims against Defendants at trial.

> injury, not the theory of liability. *See* R.C. 2307.28 ("When a release * * * is given in good faith to one of two or more persons for the same injury or loss * * *."). "Joint tortfeasors" are "[t]wo or more tortfeasors who contributed to the claimant's injury and who may be joined as defendants in the same lawsuit." Black's Law Dictionary 1794 (11th Ed.2019). There is no doubt that the alleged conduct of the hospital defendants and conduct for which appellants were found liable both "contributed to" Ms. McCann's injury. Thus, they are joint tortfeasors.

*McCann v. Durrani*, 2023-Ohio-3953, ¶ 60, 227 N.E.3d 471, 484-85 (Ohio Ct. App. 2023). Similarly, in this case the alleged negligent credentialing by the hospital defendants and Defendants' malpractice "contributed to" Plaintiffs' injury. Because the hospital defendants and Defendants are joint tortfeasors, Defendants are entitled to a set off based on the settlement settled with West Chester Hospital and UC Health.

The Court notes that Defendants would not be entitled a set off for any amount West Chester Hospital and UC Health defendants paid to settle punitive damages. *Atwood v. UC Health,* Case No. 1:16CV593, 2024 WL 4171173, at *2 (S.D. Ohio June 17, 2024). By virtue of the Court's involvement in the settlement with West Chester Hospital and UC Health, the Court has access to the confidential Master Settlement Agreement for *in camera* review. Based upon a review of that document, the Court concludes that the amounts paid to Plaintiffs under the settlement agreement were not punitive damages, but are considered damages for personal physical injury or sickness and reimbursement of medical expenses. Accordingly, Defendants' Motion is GRANTED on this basis and Defendants are entitled to a set off in the amounts paid by the West Chester Hospital and UC Health defendants.

Because setoff is appropriate, Plaintiffs shall submit the amounts they received from the settlement agreement with West Chester Hospital and UC Health so that the

Court can independently verify the amounts received to determine an appropriate amount for setoff. *Accord Potts v. Durrani*, 229 N.E.3d 792, 805 (Ohio Ct. App. 2023).

## G. Dr. Wilkey

Defendants argue that Plaintiffs' expert witness, Dr. Wilkey, should not have been permitted to testify because when this case went to trial, he was not practicing medicine in a clinical setting.

When this case went to trial in July of 2021, then-existing Ohio law required experts testifying in medical-malpractice suits to devote half their professional time to active clinical practice "at the time the testimony is offered at trial." *Frank v. Good Samaritan Hosp. of Cincinnati, Ohio*, Case No. 23-3275, 2023 WL 6623635, at *1 (6th Cir. Oct. 11, 2023) (quoting *Johnson v. Abdullah*, 187 N.E.3d 463, 468 (Ohio 2021) and citing Ohio Evid. R. 601(B)(5)(b) (2021 ed.) (requiring the proposed expert to devote "at least one-half of his or her provisional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school.")).[10]  However, if trial is delayed, "the trial court can find a non-practicing witness competent if the witness maintained an active practice on the date trial was originally scheduled." *Id.* (citing *Celmer v. Rodgers*, 871 N.E.2d 557, 562 (Ohio 2007)).

This Court has applied this exception in another medical malpractice case brought against Durrani and found that "the delay occasioned by the COVID-19 pandemic serves as an exception to the rule set forth in *Johnson v. Abdullah*, 2021 WL 4301159 (Ohio Sept. 22, 2021)." *Tara Brown, et al. v. Abubakar Atiq Durrani, et al.*, Case No. 1:18cv785 (Doc. 58).  The exception is no less applicable here.  The trial in

---

[10]Ohio Evid. R. 601(B)(5)(b) was amended in July of 2023 in order to clarify that an expert witness must be in active clinical practice at "either the time the negligent act is alleged to have occurred or the date the claim accrued."

this matter was set to begin on September 14, 2020, but this case was later stayed by S.D. Ohio General Order 20-25, which provided that "[a]ll civil and criminal jury trials scheduled between the date of this Order and September 30, 2020, are continued until a future date to be set by the assigned judge." (Doc. 965). The trial was later re-scheduled for July of 2021, and jury selection began on July 7, 2021. (Doc. 993). Accordingly, Dr. Wilkey was competent to testify when this case went to trial in July of 2021. Therefore, Defendants' Motion is DENIED on this basis.

## H. <u>Court's interference with cross-examination</u>

Defendants maintain that during trial, the Court interfered with the cross-examination of Hickey by accusing counsel of "improperly" or "unfairly" impeaching Hickey with her deposition. Defendants claim this was prejudicial because not only did Plaintiffs accused Durrani of being dishonest, but the Court accused counsel of being dishonest in front of the jury.

During her cross-examination, Hickey was asked about her earlier trial testimony that she was "not doing awesome" compared to her deposition testimony:

> Q. Then the question was, "Okay. He said you were doing awesome, that you had overdone it a little bit and you started having some pain on your right side and having right muscular pain?"
>
> And your answer was?
>
> A. I said, "Correct."

(Doc. 1020, PAGEID 36487). Counsel for Plaintiffs objected and the Court had the following discussion at sidebar:

> THE COURT: Okay. Paul, this is an unfair use of the deposition. Whoever took this deposition is asking is that what he said, and she is confirming yes, that's what he said.

So you are giving -- I think, unless she explains it differently, and the impression is that she's agreeing with what he said, but the question says, "He said you were you doing awesome," blah, blah, blah.

"Correct," that's what he said.

MR. STATMAN: And that's my objection, is --

MR. VOLLMAN: Okay.

THE COURT: So I think it's improper use of the deposition.

MR. VOLLMAN: I'll move on to the next question.

MR. STATMAN: Well, no, it's not an issue of moving on. We've got to fix what just happened.

THE COURT: You can ask her on redirect, "Do you remember a line of questions, and what were you trying to explain" --

You can clean that up on redirect.

MR. STATMAN: All right.

THE COURT: Okay?

(Doc. 1020, PAGIED 36487-36488).  The cross-examination continued and Hickey was

asked about a statement by Jamie Moor, her primary care physician:

And she said you "had a house fire and had to run quite a bit to get away from the fire and ever since then she has been in excruciating pain."

Now, do you disagree with that sentence?

A. Yeah, I disagree. The pain never went away.

Q. Okay. So you disagree -- she characterized it as an aggravation of your existing pain, and you disagree with that?

A. I do.

Q. Okay.

A. Could it be more -- you know, could the pain have increased as a result of it? Who's to -- I can't say that.

But I will say that the pain never went away. It did not come as a result of me having my house on fire.

THE COURT: In fairness to the deponent, do you want to read the rest of that page? Read the rest of the page of the deposition.

MR. VOLLMAN: Do you want me to?

THE COURT: No. I want her to read it and explain, because I think it's improper use of the deposition.

THE WITNESS: Where are you?

MR. VOLLMAN: I wasn't even in the deposition, Your Honor. I was talking about the letter.

THE COURT: You were talking about whether or not she was being honest about the fire, and the rest of the page explains her answer. It's only fair.

THE WITNESS: What page is that, Judge?

THE COURT: 89.

MR. VOLLMAN: I wasn't asking her to look at the depo. I wanted her to look at the letter.

THE COURT: You asked her about the deposition, right?

MR. VOLLMAN: No. I asked her about the letter.

THE COURT: Didn't you just read her answer?

MR. VOLLMAN: No. No. I just read the letter that Jamie Moor wrote to Dr. Goderwis. We're not even talking about the deposition anymore.

THE COURT: All right.

THE WITNESS: And since this is --

MR. VOLLMAN: There is no question now, Your Honor.

THE COURT: You can bring it up on redirect.

THE WITNESS: Line 23 --

THE COURT: No, there is not a question on the table, ma'am. Your counsel can bring that back up.

(Doc. 1020, PAGEID 36496).  A little while later, Hickey was asked about a doctor's note which described Hickey as "very active."  (Doc. 1020, PAGEID 36496).  The Court interrupted and asked counsel "to fairly use the documents. If you include the next sentence, that gives the full picture."  (Doc. 1020, PAGEID 36496).  Counsel for Defendants then asked for a sidebar conference during which there was a discussion between counsel and the Court.  Counsel complained that "it was unfair," but the Court admonished counsel for misusing documents by only showing the witness part of the document: "Start using documents fairly. You can't just pick out a snippet and then try to move on. She is allowed to look at the entire document and explain what's going on." (Doc. 1020, PAGEID 36497-36498).

Based on the review of the transcript, there were two occasions where the Court instructed counsel in front of the jury to use the full document when questioning the witness.  All the other discussions were held outside the presence of the jury. Moreover, the Court instructed the jury that the Court's rulings on objections were not to be interpreted "as any indication of how I think the case should be decided" and "were based on the rules of evidence, not on how I feel about the case."  (Doc. 1014, PAGEID 36196).  It is presumed that the jury understood and followed that instruction in its deliberations. *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 794 (6th Cir. 2002), *cert. denied*, 537 U.S. 1148, 123 S.Ct. 876, 154 L.Ed.2d 850 (2003).  "To the extent there was any potential prejudice from the comments or actions, it was cured by the [ ] court's instruction to the jury."  *Troyer v. T.John.E. Prods., Inc.*, 526 F. App'x 522, 525

18

(6th Cir. 2013) (citing *Holmes v. City of Massillon*, 78 F.3d 1041, 1046–47 (6th Cir.1996) (holding that a motion for a new trial should be denied if prejudice is cured by jury instructions)).  Therefore, Defendants' Motion is DENIED on this basis.

### I.  Durrani's indictment and flight

Defendants argue that Durrani was denied a fair trial because the Court informed the jury of Durrani's criminal indictment and his subsequent flight to Pakistan. Defendants argue that it was error for the Court to instruct the jury to draw adverse inferences based on Durrani's absence.

A jury verdict cannot be vacated based on the erroneous admission of evidence or improper jury instructions unless the testimony's admission or improper jury instructions "amounted to more than harmless error." *Kendel v. Loc. 17-A United Food & Com. Workers*, 512 F. App'x 472, 479 (6th Cir. 2013) (citing *Field v. Trigg Cnty. Hosp. Inc.*, 386 F.3d 729, 736 (6th Cir. 2004) (applying the harmless error standard to the improper admission of evidence); *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir.1994) ("An erroneous [jury] instruction, unless harmless, requires a new trial.")); *see also E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1074-75 (6th Cir. 2015) (explaining that a court should not grant a new trial for an erroneous jury instruction "where the error is harmless.").  An erroneous instruction or an improper admission of evidence requires reversal when the court "lacks a 'fair assurance' that the outcome of a trial was not affected by [the] error."  *Kendel v. Loc. 17-A United Food & Com. Workers*, 512 F. App'x 472, 480 (6th Cir. 2013) (quoting *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004), overruled on other grounds by *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc)).

During the final instructions to the jury, the Court explained that when evaluating the testimony of witnesses, the jury could consider the following:

> Under our system of criminal justice, Dr. Durrani is presumed innocent unless and until a criminal jury would unanimously find him guilty. Therefore, you are not to consider the pending charges for any purpose in this case.
>
> As you know, Dr. Durrani was not physically present in court, nor did he submit video testimony as to Mr. Atwood or Ms. Hickey's treatment. While his actions before and as a result of the Indictment are not for your consideration, there is a different instruction as to his absence and non-participation in this case. Dr. Durrani has voluntarily left the jurisdiction, removing himself from Plaintiffs' ability to subpoena him to trial.
>
> The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case. However, when a party, such as Dr. Durrani, has relevant evidence or testimony within its control that the party failed to produce, that failure gives rise to an inference that the evidence or testimony is unfavorable to that party.

(Doc. 1014, PAGEID 36202).

In another medical malpractice case brought against Durrani in state court, the trial court gave the following instruction to the jury:

> You are allowed to consider as part of your deliberation the fact that Dr. Durrani did not attend the trial and testify to specific facts about this case in his defense. ***And you may make whatever inference and conclusions you choose to from that fact.***

*Hounchell v. Durrani*, 221 N.E.3d 1020, 1035 (Ohio Ct. App. 2023) (emphasis in original).  The defendants challenged this instruction on appeal.  The Ohio First District Court of Appeals explained that while counsel may comment on a defendant's failure to attend trial, a court may not ask the trier of fact to draw inferences based on it.  *Id.* (citing *Pierce v. Durrani*, 35 N.E.3d 594, 600 (Ct. App. 2015) (holding that counsel's

comments about Durrani's absence were generally made in response to arguments by Durrani's counsel and in the context of not being able to cross-examine Durrani, and that they were, for the most part, a fair commentary on the evidence)).  Therefore, the appeals court found that it was error for the trial court to give the instruction, which went beyond recognizing that Durrani was absent for trial.  221 N.E.3d at 1036.  The appeals court explained its rationale:

> By giving the jury the ability to draw any inference or conclusion, the jury was permitted to draw both impermissible and negative inferences. The conclusions allowed by the instruction, but prohibited by law, would include the inference that Durrani was absent from trial because he had been negligent in his treatment of Hounchell or an assumption of liability based on racial prejudice against Arab-Americans. In other words, it allowed the jury to infer that Durrani was absent because of a consciousness of guilt or because of implicit biases against those of Pakistani descent, both of which are impermissible.

*Id*.  As part of its harmless error analysis, the court explained:

> while, standing on its own, the instruction inviting the jury to draw any inference from Durrani's absence at trial might have had less impact, on this record we find that the instruction compounded the resulting error from the erroneous evidentiary rulings and was therefore prejudicial.  The improper attacks on Durrani's credibility by these evidentiary rulings encouraged the jury, when considering the provided jury instruction on Durrani's absence, to draw impermissible or negative inferences regarding Durrani's absence from trial, including that he was absent because of a consciousness of guilt.

*Id*. (citation omitted).  Therefore, the appeals court found that the defendants were entitled to a new trial.  *Id*. at 1037.  Subsequent decisions reviewing the identical instruction have reached the same conclusion.  *See Greene v. Durrani*, 2023 WL 5662778, * 3 (Ohio Ct. App. Sept. 1, 2023) ("After reviewing the alleged errors at trial, we conclude that the license revocation points, aspects of the collage, and the jury instruction concerning Dr. Durrani's absence discussed above all represented errors.");

*Stratman v. Durrani*, 2023 WL 5600304, *3 (Ohio Ct. App. Aug. 30, 2023) ("Because the jury instruction in this case is identical to the erroneous one in *Hounchell*, we hold that its inclusion by the trial court here constituted an abuse of discretion.").

In a more recent decision, Ohio's First District Court of Appeals was presented with slightly different absent-defendant jury instruction. The instruction was as follows:

> The defendant, Dr. Durrani, did not attend these proceedings in person. He is represented here by counsel. You shall not speculate on why he is not present or consider his absence for any purpose except as instructed below.

> Dr. Durrani has voluntarily left the jurisdiction removing himself from plaintiff's ability to subpoena him to trial. When a party such as Dr. Durrani has relevant evidence or testimony within his or her control, and the party failed to produce that relevant evidence or testimony, that failure gives rise to an inference that the evidence or testimony is unfavorable to that party.

*Jones v. Durrani*, 2024 WL 2106140, *6 (Ohio Ct. App. May 10, 2024). The court explained that this instruction was "more limited" than the one given in the *Hounchell* case because "[i]t permits only the inference that the testimony or evidence in Dr. Durrani's possession would be unfavorable to him." *Id*. Nevertheless, the court found that the trial court erred in giving this instruction because the instruction required this inference instead of "simply permitting the inference to be made if the jury so chooses." *Id*. at *7. In addition, the instruction was not limited "to only that evidence which Dr. Durrani would 'naturally' produce, *i.e.*, evidence that was not cumulative or inferior to other evidence already produced." *Id*.

Despite this error, the court concluded that there was "no indication on the face of the record that the erroneous instruction was so prejudicial as to require reversal." Id. at *9. The court explained that a review of the jury instructions as a whole did not

indicate that the jury was probably misled by the erroneous instruction. *Id*. at *8. The court pointed to the instruction on evidence and inferences which stated:

> To infer or to make an inference is to reach a reasonable conclusion of facts which *you may, but are not required to*, make from other facts which you find have been established by direct evidence. *Whether an inference is made rests entirely on you*.

*Id*. (emphasis in original).

Here, unlike in *Hounchell*, the Court did not instruct the jury that they that "may make whatever inference and conclusions you choose to" from the fact that Durrani did not attend the trial. Instead, the instruction was more limited like the one in *Jones*, in that the jury was told that Durrani's failure to produce relevant evidence or testimony which was within his control, "gives rise to an inference that the evidence or testimony is unfavorable" to him. (Doc. 104, PAGEID 36202). Moreover, the jury was also told elsewhere in the instructions:

> While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

(Doc. 1014, PAGEID 36194). Therefore, any inferences to be drawn by the jury were permissible and not required. In addition, the jury was told that those inferences were not to be based on Durrani's Indictment, but only based on "his absence and non-participation in this case." (Doc. 1014, PAGEID 36202).

However, even if the instruction was improper, any error was harmless. None of the evidentiary errors found in *Hounchell*—which stemmed from showing the jury a "collage" video of Durrani's deposition testimony—are present here. *See* 221 N.E.3d at

1031 (explaining that there was no evidentiary basis for admitting evidence through the "collage" video that Durrani's medical licenses were revoked and that his hospital privileges were suspended).  In the present case, the "collage" video was not shown to the jury so the same evidentiary errors were not present.   Therefore, Defendants' Motion is DENIED on this basis.

**J.  <u>Consolidating claims for trial</u>**

Defendants maintain that the Court erred by setting these two Plaintiffs' claims for trial together.   Defendants explain that the two cases do not involve common questions of law or fact; and Defendants were prejudiced by having the cases consolidated.    Plaintiffs respond that consolidation was proper because Durrani performed surgeries on the same area of their spines and their medical malpractice claims are based on the same legal theory.

Federal Rule of Civil Procedure 42(a) permits consolidation of actions involving common questions of law or fact.   Fed. R. Civ. P. 42(a) ("If actions before the court involve a common question of law or fact, the court may . . . join for hearing or trial any or all matters at issue in the actions."); *see also Cantrell v. GAF Corp.*, 999 F.2d 1007,1011 (6th Cir. 1993) (explaining "[w]hether cases involving the same factual and legal questions should be consolidated for trial is a matter within the discretion of the trial court.").  In deciding whether to consolidate claims, a court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id*. (quoting *Hendrix v. Raybestos–Manhattan, Inc*., 776 F.2d 1492, 1495 (11th Cir. 1985)).

The Court grouped these Plaintiffs' claims, as well as another group of Plaintiffs' claims in an earlier trial, based upon the type of surgery performed and overlapping expert testimony. (See Doc. 873, PAGEID 32538). As set forth in the complaint, Durrani performed surgery on thoracic spine of both Plaintiffs. Durrani performed a T7-T12 fusion on Atwood (Doc. 4, PAGEID 739); and two different surgeries on Hickey involving the placement and removal of hardware at the T5-T7 level. (Doc. 4, PAGEID 748, 754-755). At trial, Plaintiffs and Defendants relied on the same expert's testimony. This demonstrates that there were common questions of fact. While Plaintiffs raised various legal theories in their complaint, only one common question of law was presented during trial: medical negligence. (Doc. 1014, PAGEID 36208).

With regard to any prejudice created by trying Plaintiffs' claims together, the Court specifically instructed the jury:

> Although there are two Plaintiffs in this action, it does not follow from that fact alone that if one Plaintiff is entitled to recover, the other Plaintiff is entitled to recover. Defendants are entitled to a fair consideration as to each Plaintiff's claim, just as each Plaintiff is entitled to a fair consideration of that Plaintiff's claims against Defendants. Furthermore, all instructions I give you govern the case as to each individual Plaintiff.
>
> From time to time, I shall refer to Christopher Atwood and Jennifer Hickey collectively as "Plaintiffs." Therefore, while the instructions will collectively refer to "Plaintiffs," your analysis must be to each individual Plaintiff and their individual claims.

(Doc. 1014, PAGEID 36190). The jury's interrogatory answers confirm that the jury differentiated between each of the individual patients. Not only did the jury award different amounts to each Plaintiff (Doc. 1011, PAGEID 36160-36161; Doc. 1012,

PAGEID 36172-36173) but the jury indicated different bases to support a finding of negligence (Doc. 1011, PAGEID 36157; Doc. 1012, PAGEID 36170).   The jury's individualized verdicts belie any argument regarding prejudice.   Therefore, Defendants are not entitled to a new trial on this basis.  *Accord Jones v. Durrani*, 2024 WL 2106140, *6 (May 10, 2024) (trial court did not abuse its discretion under Ohio R. Civ. P. 42 when joining the instant cases for trial).

## III.  <u>CONCLUSION</u>

Based on the foregoing, Defendants Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technology's Motion for Judgment as a Matter of Law, or in the alternative Motion for a New Trial (Doc. 1023) is **GRANTED in PART and DENIED in PART**.  Accordingly, Plaintiffs' claims against Defendant CAST are hereby **DISMISSED**; and the Judgments entered in this case (Docs. 1011, 1012) shall be amended as follows:

| Atwood: | | |
|---|---|---|
| | $108,608.99 | (economic) |
| | $325,826.97 | (non-economic damages) |
| + | <u>$350,000.00</u> | (punitive damages) |
| | $784,435.96 | (total judgment) |

| Hickey: | | |
|---|---|---|
| | $158,019.62 | (economic) |
| | $350,000.00 | (non-economic damages) |
| + | <u>$350,000.00</u> | (punitive damages) |
| | $858,019.62 | (total judgment) |

Within **ten (10) days** of entry of this Order, Plaintiffs shall submit the amounts they received from the settlement agreement with West Chester Hospital and UC Health

so that the Court can independently verify the amounts received to determine an appropriate amount for setoff against the judgments listed above.

**IT IS SO ORDERED.**

    */s/ Michael R. Barrett*      
JUDGE MICHAEL R. BARRETT
