UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Christopher Atwood, *et al.*,

    Plaintiff,

v.

UC Health, *et al.*,

    Defendants.

Case No. 1:16cv593

Judge Michael R. Barrett

## OPINION & ORDER

This matter came for consideration of three motions filed by Defendants Abubakar Atiq Durrani and the Center for Advanced Spine Technologies, Inc. ("CAST"): Motion for New Trial (Doc. 943); Motion for Judgment as a Matter of Law (Doc. 944); and Motion to Alter or Amend the Judgment (Doc. 945). These motions have been fully briefed. (Docs. 951, 952, 953, 960, 962).

**I.    BACKGROUND**

Plaintiffs Paul Markesberry, Jr.[1] and Carol Ross are the former patients of Defendant Dr. Abubakar Atiq Durrani. On January 29, 2020, the jury returned a verdict in their favor on their claims of negligence brought against Durrani and CAST. (Docs. 923, 924). The finding of negligence was based on overstated radiological findings, fabricated diagnosis, misdiagnosis, unnecessary surgery, failure to prescribe course of conservative care, selecting improper surgical procedure, improper placement of surgical hardware, untimely operative reports, and lack of informed consent. (Doc. 923, 924). The jury awarded Markesberry a total of $100,000.00 in economic and non-

---

[1]Sharon Howard was substituted for Markesberry as the administrator of his estate. (Doc. 869).

economic damages (Doc. 923, PAGEID 34497); and $50,000.00 in punitive damages (Doc. 923, PAGEID 34499). The jury awarded Ross a total of $1,521,500.00 in economic and non-economic damages (Doc. 924, PAGEID 34507); and $100,000.00 in punitive damages (Doc. 924, PAGEID 34509).

## II. ANALYSIS

### A. Standard of Review

#### 1. Renewed Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) allows a party to bring a motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed.R.Civ.P. 50(a)(2). If the district court denies the motion and the case is submitted to the jury, "the movant may file a renewed motion for judgment as a matter of law" within ten days after the entry of judgment on the verdict. Fed. R. Civ. P. 50(b). "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005).

#### 2. Motion for New Trial

Federal Rule of Civil Procedure 59(a) provides that a district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages

2

being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massilon, Ohio*, 78 F.3d. 1041, 1045-46 (6th Cir. 1996) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

### 3. Motion to Alter Judgments or Amend the Judgments

In the alternative, Defendants ask the Court to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). "A Rule 59(e) motion must present newly discovered evidence or clearly establish a manifest error of law." *D.E. v. John Doe*, 834 F.3d 723, 728 (6th Cir. 2016); *see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007). "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

Having set forth the applicable standards, the Court now turns to each of the arguments made in Defendants' motions.

### B. Statute of repose

In their Motion for Judgment as a Matter of Law, Defendants argue that Plaintiffs' claims are barred by the statute of repose.[2]

Ohio's statute of repose provides that "[n]o action upon a medical ... claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical ... claim." Ohio Rev. Code §

---

[2]This Court previously ruled that Ohio Revised Code § 2305.19(A) "saved" Plaintiffs' claims. *Atwood v. UC Health*, No. 1:16CV593, 2018 WL 3956766, at *8 (S.D. Ohio Aug. 17, 2018). However, after this ruling, in *Wilson v. Durrani*, 2020 WL 7636010 (Ohio Dec. 23, 2020), the Supreme Court of Ohio held that the savings statute does not save medical claims when the statute of repose applies.

3

2305.113(C)(1).  Durrani operated on Marksberry on October 4, 2010. (Doc. 4, PAGEID 748, ¶ 126).  Durrani operated on Ross on August 25, 2010 and September 11, 2012. (Doc. 4, PAGEID 754-755, ¶¶ 184, 190).  The complaint in this case was not filed until May 2, 2016.  (Doc. 4).

However, this Court has held that Ohio Revised Code § 2305.15(A) tolls the limitations period contained in Ohio Revised Code 2305.113(C).  *Landrum v. Durrani*, Case No. 1:18-cv-807, 2020 WL 3512808 at *4 (S.D. Ohio Mar. 25, 2020) (Dlott, J.); *see also Stidham v. Durrani*, Case No. 1:18-CV-810, 2021 WL 2013024, at *4 (S.D. Ohio May 19, 2021) (Black, J.); *Mahlenkamp v. Durrani*, Case No. 1:18-cv-817, 2021 WL 2012939 at *3 (S.D. Ohio May 19, 2021) (Black, J.); *Sterling v. Durrani*, Case No. 1:18-cv-802, 2021 WL 2013012 at *3 (S.D. Ohio May 19, 2021) (Black, J.); *Powers v. Durrani*, Case No. 1:18-cv-788, 2020 WL 5526401 at *1 (S.D. Ohio Sep. 15, 2020) (McFarland, J.).  The statute provides:

> When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.35 of the Revised Code does not begin to run until the person comes into the state or while the person is so absconded or concealed. After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.

Ohio Rev. Code § 2305.15(A).  Here, Durrani fled to Pakistan in November 2013 and has not returned to Ohio since that time. Therefore, the statute of repose is tolled during the time Durrani was "out of the state, has absconded, or conceal[ed] [him]self."  As a consequence, Plaintiffs' claims against Durrani are not barred by the statute of repose.

4

However, Durrani's flight does not toll the statute of repose as applied to CAST. *Brown v. Durrani*, No. 1:18CV785, 2021 WL 2779154, at *3 (S.D. Ohio July 2, 2021); *Elliot v. Durrani*, 178 N.E.3d 977, 989 (Ohio Ct. App. 2021) (explaining that "the tolling provision in R.C. 2305.15(A) applies only to claims against Durrani and not to claims against CAST.").

Therefore, Defendants' Motion for Judgment as a Matter of Law is GRANTED in PART and DENIED in PART on this basis. Accordingly, Defendant CAST is DISMISSED as a party to this litigation.

### C. Revocation of Durrani's medical license and prior civil lawsuits

Defendants maintain that the Court improperly admitted evidence regarding Durrani's medical license being revoked and prior civil lawsuits against Durrani. Defendants explain that the evidence should have been excluded under Federal Rules of Evidence 402 and 403.

This evidence came in through a "collage" video of several video depositions taken of Durrani and then spliced together. (Docs. 894, 914). This same video was used in other trials involving similar negligence claims against Durrani. In *Hounchell v. Durrani*, Ohio's First District Court of Appeals described the video as follows:

> This collage video generally consisted of questions on a variety of topics, including Durrani's role as the director of spine surgery and as an attending orthopedic surgeon, the education he received in Pakistan and his family ties to that country, prior lawsuits filed against Durrani, the revocation of his medical licenses and suspension of his privileges to practice medicine, whether various statements on his resume and on his application for a medical license were truthful, whether papers that he had submitted had to be withdrawn because the information he submitted was false, and his practices as a surgeon, including the frequency of recommending surgery to patients on their first visit.

221 N.E.3d 1020, 1026 (Ohio Ct. App. 2023).

In *Hounchell*, the First District found that the admission of evidence concerning the revocation of Durrani's medical licenses in Ohio and Kentucky was in error under Ohio Rules of Evidence 403(A).  *Id*. at 1030.  The First District explained that Durrani's license revocations were not related to the treatment of the plaintiff and occurred after the surgery performed on the plaintiff.  *Id*. at 1029.  In keeping with an earlier evidentiary ruling in another case against Durrani, the First District found that the evidence that the Ohio and Kentucky Medical Boards revoked Durrani's medical licenses due to an unrelated instance of misconduct was of minimal relevance.  *Id*. ("In *Setters*, we held that admission of medical license revocations due to an unrelated instance of misconduct and not 'attributable to the competency, knowledge, or skill possessed by Durrani during the time he performed surgery on Setters' was not probative of the ultimate issue of negligence in the case.") (quoting *Setters v. Durrani*, 164 N.E.3d 1159, 1166 (Ohio Ct. App. 2020).  The court explained:

> in addition to failing to correlate the license revocations and privileges suspensions to Hounchell, Hounchell failed to provide any context at all for why Durrani's medical licenses or hospital privileges were supposedly suspended. The collage essentially contained a series of questions asked of Durrani regarding whether the license revocations and privileges suspensions had occurred without allowing Durrani to elaborate on the reasons behind them. In one limited instance, counsel for Hounchell did ask Durrani if his privileges had been suspended for his failure to timely dictate operative reports, but that was completely unrelated to the surgery performed on Hounchell.  In the absence of this context, the questions by the Hounchells' counsel regarding Durrani's license revocations and privileges suspensions contributed very little probative value to the Evid. R. 403(A) weighing equation.

*Id*. at 1030.  The court also found the suspension and revocation evidence created a danger of unfair prejudice:

> The suspension and revocation evidence was used by the Hounchells' counsel to encourage the jury to determine that because Durrani had his

> licenses revoked and privileges suspended on other occasions, he necessarily must be an incompetent surgeon who performed an unnecessary surgery on Hounchell. Another concern recognized by *Setters* is also present in this case—where each side presented competing expert testimony, the credibility of Durrani became paramount. *Id*. This evidence thus "allowed the jury to improperly infer that Durrani was not credible and that his conduct must have been substandard." *Id*. As a result, the prejudice that resulted from admitting the suspension and revocation evidence outweighed the scant probative value it offered the jury.

*Id*. (citing *Setters*, 164 N.E.3d at 1167).  Therefore, the court concluded that the evidence "was of minimal to no relevance and any probative value was substantially outweighed by the danger of unfair prejudice." *Id*. at 1031.  As a result, the court ruled that the trial court abused its discretion in admitting the suspension and revocation evidence. *Id*.

Similarly, the First District found that evidence of other lawsuits filed against Durrani was not related to the surgery performed on the plaintiff. *Id*. The court explained:

> No evidence was introduced about the nature of the lawsuits, including whether they involved allegations that Durrani performed a medically unnecessary surgery or failed to obtain informed consent, the issues present in the case at bar. And the questions regarding the nonmedical lawsuit filed against Durrani by a law firm for unpaid bills served no purpose other than to encourage the jury to infer that Durrani was irresponsible and failed to pay his bills. Perhaps even more troubling was the question regarding the dismissed charge of misdemeanor assault. First, the charge was just an allegation, was ultimately dismissed, and did not result in a conviction. Second, whether Durrani had been previously charged with misdemeanor assault was entirely irrelevant to the case at hand and served no purpose other than to enflame the jury's opinion of Durrani and insinuate that he was a violent man.

*Id*. at 1032.  The court concluded that the evidence was not admissible for a permissible purpose under Ohio Rule of Evidence 404(B) and "the prejudicial impact of this evidence outweighed its very limited probative value." *Id*.

7

Before trial, this Court ruled that parts of the collage video would not be shown. (Doc. 906). However, the remaining parts of the video which were shown to the jury included the same evidence which the Ohio First District Court of Appeals found irrelevant and more unfairly prejudicial than probative. As to the license revocations, these same questions were included in the evidence presented to the jury:

> Isn't it true that on March 12, 2014, your medical licenses was [sic] permanently revoked by the State of Ohio?
>
> Isn't it true in April 2014 your Kentucky medical license was revoked?
>
> Isn't it true that at Children's Hospital you've had your privileges suspended for not getting your operative reports dictated timely?
>
> And did you have your privileges suspended from time to time at West Chester UC Health also, correct?
>
> And isn't it true that you had your privileges suspended at Journey Lite?
>
> And isn't it true that before you left the United States Medicare suspended you as a medical provider?
>
> Isn't it true that before you left the United States Anthem suspended you as a medical provider?

*Hounchell v. Durrani*, 221 N.E.3d at 1029. (Cf. Doc. 894, PAGEID 33724, 33727-28).

With regard to the other lawsuits filed against Durrani, not all the same statements were shown to the jury, but the following questions were admitted as part of the collage video:

> And isn't it true in your application to the Kentucky and Ohio Medical Boards in 2010 you never admitted in the application you had been sued for medical malpractice?
>
> Well, the application that you signed under oath said there were no lawsuits pending. And, as a matter of fact, there were multiple suits pending, weren't there?
>
> Isn't it true in 2009 a law firm that represented Children's Hospital and West Chester, Dinsmore & Shohl, had done work for you and sued you for fees for work you owed them on a patent case?

8

You don't recall being sued by Dinsmore & Shohl for unpaid legal fees?

*Id*. at 1032 (Cf. Doc. 894, PAGEID 33736, 33737, 33746).

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, under Federal Rule of Evidence 403, relevant evidence may be excluded by the court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, there was no connection between the loss of Durrani's licenses and Plaintiffs' medical care. Durrani operated on Marksberry on October 4, 2010. (Doc. 4, PAGEID 748); Durrani operated on Ross on August 25, 2010 and September 11, 2012. (Id., PAGEID 754-55). Durrani's licenses were not revoked until 2014. Similarly, there was no connection between the prior civil lawsuit filed against Durrani by a law firm and the medical care he provided to these two Plaintiffs. In addition, the probative value of this information is not substantially outweighed by a danger of unfair prejudice. *Accord Setters v. Durrani*, 164 N.E.3d 1159, 1167 (Ohio Ct. App. 2020) ("The danger of unfair prejudice is readily apparent in this case. Setters's counsel used evidence of the license revocation in such a way that it invited the jury to draw an improper inference about Durrani's credibility."); *Ross v. Am. Red Cross*, No. 2:09-cv-00905, 2012 WL 2004810, at *5-6 (S.D. Ohio June 5, 2012) (excluding evidence under Rules 402 and 403 because the "marginal relevance" of other lawsuits "is substantially outweighed by the danger of unfair prejudice and confusion of the issues" and such evidence "may also invite mini-

9

trials about facts and circumstances that may not be similar to the present case"). Therefore, this evidence should have been excluded under Federal Rules of Evidence 402 and 403.

### D. Durrani's indictment and flight

Defendants argue that Durrani was denied a fair trial because the Court informed the jury of Durrani's criminal indictment and his subsequent flight to Pakistan. Defendants also argue that it was error for the Court to instruct the jury to draw adverse inferences based on Durrani's absence.

During the final instructions to the jury, the Court explained that when evaluating the testimony of witnesses, the jury could consider the following:

> On August 7, 2013 Dr. Durrani was indicted for various counts of healthcare fraud. Sometime after the filing of the Indictment, Dr. Durrani left the jurisdiction and subpoena power of this Court and went to Pakistan. Under our system of criminal justice, Dr. Durrani is presumed innocent unless and until a criminal jury would unanimously find him guilty. Therefore, you are not to consider the pending charges nor his flight for any purpose in this case.
>
> As you know Dr. Durrani, was not physically present in court, nor did he submit video testimony as to Ms. Ross or Mr. Markesberry's treatment. While his actions before and as a result of the Indictment are not for your consideration, there is a different instruction as to his absence and non-participation in this case. As Dr. Durrani has voluntarily left the jurisdiction, removing himself from Plaintiffs' ability to subpoena him to trial, you may make whatever inferences and conclusion you choose from that fact, provided you draw no inferences adverse to Plaintiffs as it relates to their burden of proof by a preponderance of the evidence.

(Doc. 925, PAGEID 34521-22).

In another medical malpractice case brought against Durrani in state court, the trial court gave the following instruction to the jury:

> You are allowed to consider as part of your deliberation the fact that Dr. Durrani did not attend the trial and testify to specific facts about this case

in his defense. ***And you may make whatever inference and conclusions you choose to from that fact.***

*Hounchell v. Durrani*, 221 N.E.3d 1020, 1035 (Ohio Ct. App. 2023) (emphasis in original). The defendants challenged this instruction on appeal. The Ohio First District Court of Appeals explained that while counsel may comment on a defendant's failure to attend trial, a court may not ask the trier of fact to draw inferences based on it. *Id*. (citing *Pierce v. Durrani*, 35 N.E.3d 594, 600 (Ohio Ct. App. 2015) (holding that counsel's comments about Durrani's absence were generally made in response to arguments by Durrani's counsel and in the context of not being able to cross-examine Durrani, and that they were, for the most part, a fair commentary on the evidence)). Therefore, the appeals court found that it was error for the trial court to give the instruction, which went beyond recognizing that Durrani was absent for trial. 221 N.E.3d at 1036. The appeals court explained its rationale:

> By giving the jury the ability to draw any inference or conclusion, the jury was permitted to draw both impermissible and negative inferences. The conclusions allowed by the instruction, but prohibited by law, would include the inference that Durrani was absent from trial because he had been negligent in his treatment of Hounchell or an assumption of liability based on racial prejudice against Arab-Americans. In other words, it allowed the jury to infer that Durrani was absent because of a consciousness of guilt or because of implicit biases against those of Pakistani descent, both of which are impermissible.

*Id*. As part of its harmless error analysis, the court explained:

> while, standing on its own, the instruction inviting the jury to draw any inference from Durrani's absence at trial might have had less impact, on this record we find that the instruction compounded the resulting error from the erroneous evidentiary rulings and was therefore prejudicial. The improper attacks on Durrani's credibility by these evidentiary rulings encouraged the jury, when considering the provided jury instruction on Durrani's absence, to draw impermissible or negative inferences regarding Durrani's absence from trial, including that he was absent because of a consciousness of guilt.

*Id*. (citation omitted).  Therefore, the appeals court found that the defendants were entitled to a new trial.  *Id*. at 1037.  Subsequent decisions reviewing the identical instruction have reached the same conclusion.  *See Greene v. Durrani*, 2023 WL 5662778, * 3 (Ohio Ct. App. Sept. 1, 2023) ("After reviewing the alleged errors at trial, we conclude that the license revocation points, aspects of the collage, and the jury instruction concerning Dr. Durrani's absence discussed above all represented errors."); *Stratman v. Durrani*, 2023 WL 5600304, *3 (Ohio Ct. App. Aug. 30, 2023) ("Because the jury instruction in this case is identical to the erroneous one in *Hounchell*, we hold that its inclusion by the trial court here constituted an abuse of discretion.").

In a more recent decision, Ohio's First District Court of Appeals was presented with slightly different absent-defendant jury instruction.  The instruction was as follows:

> The defendant, Dr. Durrani, did not attend these proceedings in person. He is represented here by counsel.  You shall not speculate on why he is not present or consider his absence for any purpose except as instructed below.
>
> Dr. Durrani has voluntarily left the jurisdiction removing himself from plaintiff's ability to subpoena him to trial.  When a party such as Dr. Durrani has relevant evidence or testimony within his or her control, and the party failed to produce that relevant evidence or testimony, that failure gives rise to an inference that the evidence or testimony is unfavorable to that party.

*Jones v. Durrani*, 2024 WL 2106140, *6 (Ohio Ct. App. May 10, 2024).  The court explained that this instruction was "more limited" than the one given in the *Hounchell* case because "[i]t permits only the inference that the testimony or evidence in Dr. Durrani's possession would be unfavorable to him."  *Id*.  Nevertheless, the court found that the trial court erred in giving this instruction because the instruction required this inference instead of "simply permitting the inference to be made if the jury so chooses."

12

*Id*. at *7. In addition, the instruction was not limited "to only that evidence which Dr. Durrani would 'naturally' produce, *i.e.*, evidence that was not cumulative or inferior to other evidence already produced." *Id*.

Despite this error, the court concluded that there was "no indication on the face of the record that the erroneous instruction was so prejudicial as to require reversal." Id. at *9. The court explained that a review of the jury instructions as a whole did not indicate that the jury was probably misled by the erroneous instruction. *Id*. at *8. The court pointed to the instruction on evidence and inferences which stated:

> To infer or to make an inference is to reach a reasonable conclusion of facts which *you may, but are not required to*, make from other facts which you find have been established by direct evidence. *Whether an inference is made rests entirely on you*.

*Id*. (emphasis in original).

Here, this Court gave an absent-defendant instruction which was similar to the one given in *Hounchell*. This Court instructed the jury that they that "may make whatever inference and conclusions you choose to" from the fact that Durrani did not attend the trial and testify to specific facts about this case in his defense. However, the jury was also told elsewhere in the instructions:

> While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

(Doc. 925, PAGEID 34517). Therefore, any inferences to be drawn by the jury were permissible and not required. In addition, the jury was told that those inferences were not to be based on Durrani's flight, but only based on "his absence and non-participation

13

in this case." (Doc. 925, PAGEID 34522). However, while the jury was told they were not to consider the pending charges nor his flight for any purpose in this case, the Court finds that "the instruction was so broadly worded that it allowed the jury to draw impermissible inferences from Durrani's absence," including that Durrani was absent from trial because he had been negligent in his treatment of Plaintiffs. *Hounchell*, 221 N.E.3d at 1036. Therefore, that portion of instructions was improper.

A jury verdict cannot be vacated based on the erroneous admission of evidence or improper jury instructions unless the testimony's admission or improper jury instructions "amounted to more than harmless error." *Kendel v. Loc. 17-A United Food & Com. Workers*, 512 F. App'x 472, 479 (6th Cir. 2013) (citing *Field v. Trigg Cnty. Hosp. Inc.*, 386 F.3d 729, 736 (6th Cir. 2004) (applying the harmless error standard to the improper admission of evidence); *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir.1994) ("An erroneous [jury] instruction, unless harmless, requires a new trial.")); *see also E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1074-75 (6th Cir. 2015) (explaining that a court should not grant a new trial for an erroneous jury instruction "where the error is harmless."). An erroneous instruction or an improper admission of evidence requires reversal when the court "lacks a 'fair assurance' that the outcome of a trial was not affected by [the] error." *Kendel v. Loc. 17-A United Food & Com. Workers*, 512 F. App'x 472, 480 (6th Cir. 2013) (quoting *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004), overruled on other grounds by *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc)).

Here, as in *Hounchell*, Durrani's credibility was at issue at trial. 221 N.E.3d at 1036. The improper admission of the evidence concerning Durrani's licenses being

revoked and prior lawsuits against Durrani "directly impacted the jury's assessment of his credibility." *Id*. "And while, standing on its own, the instruction inviting the jury to draw any inference from Durrani's absence at trial might have had less impact . . . the instruction compounded the resulting error from the erroneous evidentiary rulings and was therefore prejudicial." On this basis, the Court concludes that the any error in the jury instruction was not harmless and Defendants are entitled to a new trial on this basis.

### E. Consolidating claims for trial

Defendants maintain that the Court erred by setting these two Plaintiffs' claims for trial together. Defendants explain that the two cases do not involve common questions of law or fact; and Defendants were prejudiced by having the cases consolidated. Plaintiffs respond that consolidation was proper because Durrani performed surgeries on the same area of their spines and their medical malpractice claims are based on the same legal theory.

Federal Rule of Civil Procedure 42(a) permits consolidation of actions involving common questions of law or fact. Fed. R. Civ. P. 42(a) ("If actions before the court involve a common question of law or fact, the court may . . . join for hearing or trial any or all matters at issue in the actions."); *see also Cantrell v. GAF Corp.*, 999 F.2d 1007,1011 (6th Cir. 1993) (explaining "[w]hether cases involving the same factual and legal questions should be consolidated for trial is a matter within the discretion of the trial court."). In deciding whether to consolidate claims, a court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to

15

conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id*. (quoting *Hendrix v. Raybestos–Manhattan, Inc*., 776 F.2d 1492, 1495 (11th Cir. 1985)).

The Court grouped these Plaintiffs' claims, as well as another group of Plaintiffs' claims in an earlier trial, based upon the type of surgery performed and overlapping expert testimony. (Doc. 873, PAGEID 32538). As set forth in the complaint, Durrani performed an anterior cervical disectomy C6-C7 with fusion, posterior laminectomy, foraminotomy C5-C6 on Marksberry; and a C4-S1 posterior spinal fusion, a right side laminectomy, right sided foraminotomy C4-S1, and a fusion with instrumentation C4-S1, and hardware replacement with a later C7-T1 anterior cervical disectomy and an anterior cervical fusion with instrumentation on Ross. (Doc. 4, PAGED 748, 754-755). Therefore, both Plaintiffs base their claims on cervical spine surgeries. At trial, Defendants relied on the expert testimony of Dr. Dahari Brooks, M.D. and Dr. Myron Marx, M.D. to defend against the claims brought by both Plaintiffs. (Doc. 912, 915). This demonstrates that there were common questions of fact. While Plaintiffs raised various legal theories in their complaint, only one common question of law was presented during trial: medical negligence. (Doc. 924, PAGEID 34532).

With regard to any prejudice created by trying Plaintiffs' claims together, the Court specifically instructed the jury:

> Although there are two Plaintiffs in this action, it does not follow from that fact alone that if one Plaintiff is entitled to recover, the other Plaintiff is entitled to recover. Defendants are entitled to a fair consideration as to each Plaintiff's claim, just as each Plaintiff is entitled to a fair consideration of that Plaintiff's claims against Defendants. Furthermore, all instructions I give you govern the case as to each individual Plaintiff.

(Doc. 925, PAGEID 34513). The jury's interrogatory answers confirm that the jury differentiated between each of the individual patients. Not only did the jury award vastly different amounts to each Plaintiff (Doc. 923, PAGEID 34496-34497; Doc. 924, PAGEID 34506-34507) but the jury indicated different bases to support a finding of negligence (Doc. 923, PAGEID 34492-34493; Doc. 924, PAGEID 34503-34504). The jury's individualized verdicts belie any argument regarding prejudice. Therefore, Defendants are not entitled to a new trial on this basis. *Accord Jones v. Durrani*, 2024 WL 2106140, *6 (May 10, 2024) (trial court did not abuse its discretion under Ohio R. Civ. P. 42 when joining the instant cases for trial).

### III.  CONCLUSION

Based on the foregoing, Defendants Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technology's Motion for New Trial (Doc. 943) is **GRANTED**; Defendants' Motion for Judgment as a Matter of Law (Doc. 944) is **GRANTED in PART and DENIED in PART**; and Defendants' Motion to Alter or Amend the Judgment (Doc. 945) is **DENIED as MOOT**. Accordingly, this matter shall be set for a new trial; and Plaintiffs' claims against Defendant CAST are hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                                                   */s/ Michael R. Barrett*
                                                           JUDGE MICHAEL R. BARRETT